609 So.2d 76 (1992)
Christopher Leon GIBBS, Appellant,
v.
STATE of Florida, Appellee.
No. 92-299.
District Court of Appeal of Florida, First District.
November 19, 1992.
Rehearing Denied January 7, 1993.
Louis O. Frost, Jr., Public Defender, and James T. Miller, Asst. Public Defender, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., and Amelia L. Beisner, Asst. Atty. Gen., Tallahassee, for appellee.
*77 ZEHMER, Judge.
Gibbs was convicted on a guilty plea of possession of cocaine in violation of section 893.13, Florida Statutes (1991). Although he had a prior record of drug-related offenses, pursuant to the negotiated plea his sentence was suspended and he was placed on probation for 18 months and required to comply with eleven conditions. Condition one recited:
You will serve SIX months in the Duval County Jail with credit for TWENTY-FIVE days time served and you will be entitled to good and gain time. During your jail term you will be enrolled and participate in the Criminal Justice Substance Abuse Treatment Program as directed by the Department of Corrections.
Gibbs now appeals an order revoking his probation for violation of this condition and sentencing him to 30 months in prison based on his removal from the drug abuse treatment program.
The record of the revocation hearing reveals the following facts. Gibbs was enrolled in the specified drug treatment program as directed. Mr. Randolph, a counselor in charge, described the program and explained that participants attend two meetings a day (one in the morning and one in the afternoon), each usually lasting approximately 30 minutes. The usual program lasts about 90 days, but Gibbs attended the program for only about two weeks. The purpose of the meetings is to conduct a "therapeutic community" in a controlled environment in which the program coordinator attempts to "create some dynamics in the residence" by letting the participants "try to run the program itself." During morning meetings, the participants are asked to discuss complaints they have about the program. The participants attend classes the balance of the day for about eight hours.
During one morning meeting counselor Randolph observed that Gibbs "appeared to want to take charge of all the objects of the morning meeting ... [by] interrupting and trying to control what was going on at that time... ." Randolph instructed the participants to raise their hands when they wanted the coordinator to address them, but Gibbs did not follow these instructions as "[h]e did not give the coordinator time to go around and ask each person to speak on his or her complaint." Randolph observed similar behavior by Gibbs in "[m]aybe three" morning meetings during the two-week period Gibbs was there In an "individual session" Randolph explained to Gibbs what was expected of him in these meetings, and "on several occasions outside of the therapeutic community," Randolph held one or two in-depth personal conferences with Gibbs to discuss his problems. When Randolph was asked, "[W]hat would happen when Gibbs would try to control the sessions? What would happen to the other people that were in attendance?," he responded, "They would just become silent and look at him." Randolph opined that the "atmosphere" in the therapeutic community was important so that each participant "has an opportunity to participate and have a structure to it." Randolph only dealt with Gibbs at the morning complaint meetings.
Randolph further testified that drug addicts like Gibbs often had problems adjusting to the program at the beginning, but he never heard any of them use the profanity that Gibbs did. Randolph agreed "that part of Mr. Gibbs' behavior is due in large part to his social situation and drug problem, including his problem about the judicial system." But Randolph insisted that this would not be tolerated "to the point that TC [therapeutic community] will be destroyed based on his behavior." He stated that Gibbs could be treated, but he did not know in what setting, for Gibbs would be a hindrance to this setting as this program was designed to treat only those persons who volunteered to attend it. Randolph did not believe that Gibbs would benefit from attending this program in this setting.
On questioning by the court as to the specific incident causing Gibbs's termination, Randolph explained that he had an officer remove Gibbs from the meeting after Gibbs had disrupted the discussion by exclaiming to Randolph, "fuck you, I don't *78 need you." However, when asked by the court whether Gibbs did "actively participate in his own therapy," Randolph responded with commendable candor:
Let me say this, and I will say this for him, when I dealt with him one-on-one, he participated with me, and I dealt with him in a different manner than I would say mostly because it's obvious both of us [are] black, and I felt some kinship of trying to help him more, I would say, you know, more than any other time when I would try to help an individual, because I would observe some of the things going on with him, and I would observe and talk with him about some of the incident problems.
But on the other hand, like I said, I couldn't risk damaging the total community just for Mr. Gibbs, because I had a job and a job description to perform also.
Mr. McIntire, Gibbs's probation officer, discussed the program with Gibbs two times before Gibbs's removal from the program. On these occasions, Gibbs appeared to be nervous and apprehensive about his participation in the program and told McIntire that he was having a hard time dealing with the process in general and did not "really like" what was going on around him, but would try to "stick it out." McIntire told Gibbs to try to "stick it out," that it was for his benefit, but that the decision was up to him as McIntire "wasn't trying to sway him either way." Gibbs indicated to McIntire that "he was going to try to make the best of it." After Gibbs was removed, McIntire again discussed the matter with him and Gibbs apparently stated that he would like to give the program another try. On October 11, 1991, Officer McIntire executed an affidavit alleging that Gibbs had violated condition one of his probation in that he
was expelled from the Criminal Justice Substance Abuse Treatment Program on 9/30/91 and sent back to the Prison Farm. According to River Region Therapist, Walter Torrance, the subject was very argumentative and failed to comply with the conditions set forth in the program.
Mr. Torrance did not testify at the revocation hearing.
Gibbs, testifying in his own behalf, denied using the profanity indicated by counselor Randolph. Gibbs acknowledged, however, that he needed drug abuse therapy and that to help himself he was willing to do his best to complete this drug program, if reinstated, or any other drug program.
The trial court rejected Gibbs's denial of using profanity, accepted the counselor's testimony that Gibbs had been disruptive, and ruled from the bench:
There certainly has to be dialogue in this type of program for it to succeed. And we certainly aren't always dealing with people who are necessarily self-disciplined people. But, I find it to be a substantial violation of the terms and conditions under which he was placed by the court order in that program for him to break up a group therapy session like that using language like that and having the attitude like that, that is a substantial violation of the rules of that institution, and in my opinion of the probation which I placed on him, so I will find that Mr. Gibbs was in violation of probation by a preponderance of the evidence.
Gibbs argues that the evidence was insufficient to show a willful and substantial refusal to participate in the drug program in violation of condition one and that the judge abused his discretion in revoking his probation. He cites Yancey v. State, 547 So.2d 1040 (Fla. 1st DCA 1989), and Young v. State, 566 So.2d 69 (Fla. 2d DCA 1990), in support of his argument. The State responds that the evidence is sufficient to show a willful and substantial violation because Gibbs persisted in his disruptive behavior after being forewarned about it.
In Young, the trial court ordered the defendant's probation revoked for violating a condition requiring that he "`[c]omplete MDSO [mentally disordered sex offender] program,'" finding that Young "had `failed to complete the Mentally Disordered Sex Offender Program as court ordered ... by being unsuccessfully terminated from the SHARE [Sexual Health: Awareness, Rehabilitation, Education] program ... as of *79 3/17/89 due to the probationer's denial of ever engaging in this sexual offense in question.'" 566 So.2d at 69. Reversing the order of revocation, Judge Frank explained for the appellate court:
"A violation which triggers a revocation of probation must be willful and substantial and the willful and substantial nature of the violation must be supported by the greater weight of the evidence." Hightower v. State, 529 So.2d 726 (Fla. 2d DCA 1988). In spite of Young's admission to the violation for the narrow reason that he had actually been dismissed from the SHARE program, he expressed a willingness to complete some form of MDSO counseling. The probation order did not specify the period within which Young was to complete the program, how many chances he would be given to obtain success, or when within the eighteen year term of his suspended sentence he was required to complete the program. Because the order was so non-specific, and because Young professed his desire to complete this condition of probation in some form acceptable to him, we have determined from the totality of the several considerations that the trial court abused its discretion in revoking Young's probation.
566 So.2d at 69-70.
The issue presented to us is a close one, and we are ever loath to second guess the trial court's discretionary disposition of the matter. However, in view of the applicable principles set forth in the cited cases, we conclude that Appellant's probation should not have been revoked on this record. We are cognizant of the need for maintaining order in the "therapeutic community" being fostered in the drug abuse treatment program here involved, and admittedly Gibbs's behavior was shown to be disruptive during the morning complaint meetings. However, based on this record, Gibbs's disruptive outbursts during the complaint meetings appear to be a manifestation of antisocial behavioral characteristics that derive from his drug abuse problem for which he needs treatment, and nothing in the testimony evidences a contrary assessment. Counselor Randolph agreed that Gibbs is in need of treatment and is treatable, but probably in some other setting. Gibbs's inability to control the antisocial behavior for which he needs treatment in a drug therapy program does not rise to the level of conduct evidencing a willful and substantial refusal to participate in the program required to revoke his probation. If this program does not in fact provide a suitable setting for treating his problems, it necessarily follows that his inability to properly conform to its requirements cannot be treated as a willful refusal to participate. As was true in Young, the general provisions of condition one in this case lack the specifics required to warrant a finding of willful and substantial violation under the circumstances.
For these reasons, the order of revocation is reversed and this case is remanded for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.
ERVIN and WIGGINTON, JJ., concur.