672 So.2d 587 (1996)
Theron THOMAS, Appellant,
v.
STATE of Florida, Appellee.
No. 94-3418.
District Court of Appeal of Florida, Fourth District.
April 24, 1996.
*588 Ruth Martinez, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.
PARIENTE, Judge.
Defendant appeals from his sentence of fifteen years incarceration following the trial court's determination that he had violated his probation. We reverse because there is no evidence in the record to support a finding that the violations were willful.
Defendant's two probation violations stem from the fact that defendant was discharged from Fern House, a halfway house and residential treatment program, less than three weeks after commencing the program. One of the specific conditions of defendant's probation was that he successfully complete the six-month residential treatment program at Fern House. As part of the treatment program, defendant was required to obtain a job. It was in connection with defendant's attempt to obtain a job that the series of mishaps leading to his discharge occurred.
The uncontroverted evidence is that defendant returned to Fern House past curfew because his vehicle had a flat tire. At the time, defendant was driving to an approved job interview in Broward County. Defendant described the efforts he made to return to Fern House in Lake Worth. These efforts included calling both of his parents, neither of whom could pick him up. Defendant eventually returned to Fern House past curfew by walking the majority of the distance from Boca Raton, where he left the vehicle, to Lake Worth.
Defendant did not telephone Fern House directly about his predicament because its policy was not to accept collect calls and defendant had spent all his money on gas for the car. He did, however, call both his mother and father collect and had them notify the appropriate personnel at Fern House of the situation.
Several witnesses, including his parents, corroborated defendant's story that car trouble prevented him from returning to Fern House on time, and there is no contrary evidence challenging the veracity of defendant's account. The assistant manager testified that when defendant returned he did not appear to be under the influence of alcohol or drugs. There was testimony, however, that a resident not making contact with Fern House by 11:00 p.m. and not receiving permission to stay out would be automatically dismissed.
There is also some indication that defendant was discharged not only for returning late on the evening of his car trouble, but for leaving early the next morning to retrieve his car without first speaking with the program director. Defendant testified that he left early in the morning because the manager of the gas station where defendant had left his disabled car had warned him that the car would be towed if not removed by 11:00 a.m. that morning. Defendant's cousin testified that he and defendant's father accompanied defendant the next morning to the gas station *589 where they replaced the tire on defendant's car.
There is no evidence that defendant was instructed or ordered to report to the program director before leaving the next morning. While there was testimony about an "unwritten rule" as to this requirement, there was also no evidence that defendant had been advised of this rule. The assistant manager testified that he believed defendant would have obeyed a direct order and that he did not think that "being tactful" with defendant would work.
The assistant house manager also testified that the problem may have been that the program was not suited to defendant's needs, rather than that defendant willfully disregarded the rules of the halfway house. As to defendant's conduct while at the halfway house, the assistant house manager testified that, "[t]o say he didn't try would be wrong or unfair."
To support a revocation of probation, there must be a showing that the probationer deliberately and willfully violated one or more of its terms. See Jackson v. State, 622 So.2d 1027, 1029 (Fla. 4th DCA 1993); Steiner v. State, 604 So.2d 1265, 1267 (Fla. 4th DCA 1992); Chatman v. State, 365 So.2d 789 (Fla. 4th DCA 1978). "When a defendant's probation is sought to be revoked because of his failure to successfully complete a designated rehabilitation program, some evidence must be submitted to show that the defendant was in some manner responsible for such failure." Miller v. State, 661 So.2d 353, 354-55 (Fla. 4th DCA 1995) (quoting Curry v. State, 379 So.2d 140, 141 (Fla. 4th DCA 1980)); Gibbs v. State, 609 So.2d 76 (Fla. 1st DCA 1992). If a probationer makes reasonable efforts to comply, his failure will not be considered willful. See Steiner, 604 So.2d at 1268; Gardner v. State, 365 So.2d 1053, 1054 (Fla. 4th DCA 1978); Scott v. State, 485 So.2d 40 (Fla. 2d DCA 1986).
In Stevens v. State, 599 So.2d 254 (Fla. 3d DCA 1992), the trial court found that the defendant violated probation by failing to attend a meeting required by the terms of his probation. The uncontroverted evidence at the probation violation hearing was that the defendant had failed to attend "because of a sequence of untoward events which included the breakdown of the car in which he was riding." Id. The third district noted that "there was essentially no evidence this comedy of errors had not taken place." Id. In reversing, the third district concluded that "[h]owever inept and negligent his conduct, the record does not support the conclusion that Stevens willfully or deliberately missed the meeting." Id. at 255. The third district reversed the trial court, holding that a violation of probation requires that the "deviation be the product of a knowing and willful act by the probationer." Id.
Here, as in Stevens, while defendant's attempts to comply may have been inept or negligent, there is no evidence to support a conclusion that defendant's failure to return to Fern House on time was the product of a knowing and willful act. Similarly, without evidence that defendant was instructed or ordered to report to the program director the next morning, a finding of willfulness is unsupported. See Ware v. State, 575 So.2d 759 (Fla. 4th DCA 1991); Anderson v. State, 579 So.2d 344 (Fla. 1st DCA 1991). Thus, there is no substantial competent evidence to support a finding that defendant's discharge from Fern House was due to willful conduct on his part.
The second violation, changing residence without first procuring his probation officer's consent, was the direct result of defendant's discharge from Fern House. Because defendant did not receive prior notice that he was being discharged, he cannot be said to have willfully failed to first obtain his probation officer's consent before changing his residence. See Kotowski v. State, 344 So.2d 602 (Fla. 3d DCA 1977).
Accordingly, we reverse defendant's conviction for violations of probation.
REVERSED AND REMANDED.
FARMER and STEVENSON, JJ., concur.