DELL, J.
Cory Riddle appeals the revocation of his community control. He contends that his violation, failing to be home when his weekly log required him to be, was neither willful nor deliberate. He also contends that the trial court departed from its role of impartiality during his revocation hearing, depriving him of due process. We agree and reverse.
On October 23, 1997, appellant pled no contest to two counts of aggravated battery. The trial court withheld adjudication and sentenced him to two years community control followed by ten years probation. On March 3, 1999, appellant’s community control officer filed a violation of community control affidavit that alleged appellant violated one condition of his community control: on February 27, 1999, at 10:10 a.m., he failed to remain confined at his approved residence as required by his weekly log. The trial court found appellant violated his community control and sentenced him to eight years incarceration.
At the violation of community control hearing, appellant stipulated that his community control officer instructed him on the conditions of his community control, he knew the terms and conditions of his community control, and it was his signature on the probationary documents. He also admitted that he filled out his weekly log and wrote he would be working from 1:00 p.m. to 1:00 a.m. on February 27, 1999. He further conceded that when his community control officer visited his home at 10:10 a.m., he was at work.
Under the circumstances, the court could well determine, as it obviously did, that even the most technical violation of the terms of [community control] would justify its revocation.... It is required, however, that any such deviation be the product of a knowing and willful act by the probationer.
Stevens v. State, 599 So.2d 254, 255 (Fla. 3d DCA 1992); see also Molina v. State, 520 So.2d 320, 321 (Fla. 2d DCA 1988)(noting that a technical violation alone is insufficient to justify a revocation; it must also be willful).
Appellant testified at the revocation hearing that he inadvertently, out of “habit,” put 1:00 p.m. to 1:00 a.m. on his weekly log because he had put that same time on his log for over a year. He stated that he thought he had written 8:00 p.m. to 8:00 a.m. because he knew he had to work a concert that night at a club that opened at 10:00 p.m. and closed at 5:00 a.m. He explained that he did not leave for work until 8:00 p.m. believing he had put that time on his schedule.
At the time of the alleged violation, appellant worked for his father at a sound and lighting company. His job required him to set. up the lighting, stage, and sound for concerts at particular clubs. According to appellant’s testimony, at around 3:30 a.m. the crew started loading the equipment from the concert on a truck. Normally it would have taken the group two hours, but that morning the hydraulic lift would not work. Consequently, the crew had to finish loading the speaker stacks, weighing 700 pounds each, by hand. The crew finished loading the truck around 7:00 or 7:30 a.m. Realizing that he might be late getting home, appellant went to a pay phone and paged his community control officer, leaving his father’s cell phone number. Appellant’s community control officer did not return his call. Thereafter, the crew, including appellant, drove to a storage unit and unloaded the equipment, which took another two to two-and-half hours to finish.
When the crew finished their work, appellant’s co-worker, who had driven him to *773 work, drove him home. Appellant testified that he did not own a car or have a driver’s license. He also testified that it would not have been practical for him financially to take a cab home because of the distance. He further testified that he was not concerned about being late because in the past, when he worked at another job, his community control officer permitted him to be late, as long as he paged her.
Appellant’s community control officer did not contradict appellant’s testimony. She testified that when she arrived at appellant’s house his mother told her that appellant was working and running late. She confirmed that when appellant worked at a previous job and he would be running late, it was not a problem if he paged her. She further testified that when appellant returned home around 10:30 a.m. he told her that he was the only one at work and he had to protect the sound equipment. She also clarified that the office was closed on Saturdays and that she usually turned her beeper off at nights.
A co-worker and appellant’s father also testified. Their testimony substantiated appellant’s account of what happened that morning. Appellant’s father testified that he heard appellant say that he needed to call his community control officer because he was going to be late. Appellant’s father added that he was not concerned about his son being late because he understood from other instances that as long as appellant told his community control officer he was running late, there would not be a problem.
The state failed to contradict appellant’s testimony that his schedule required him to be home at 8:00 that morning and that he could not be home at that time because of a problem at work. The state also failed to rebut appellant’s claim that he paged his community control officer, as she had asked him to do in the past, when he feared that he might be late and she did not respond. See Taylor v. State, 734 So.2d 1171, 1172 (Fla. 1st DCA 1999)(re-versing the order of revocation because the defendant’s uncontradicted testimony did not establish that he willfully violated three of the four conditions); see also Thomas v. State, 672 So.2d 587, 588 (Fla. 4th DCA 1996). Furthermore, the record shows that until this violation, appellant had been a model probationer and that the community control was serving its purpose. According to appellant’s community control officer, he had always reported on time, completed boot camp, got his GED, and enrolled in Broward Community College. See Dassau v. State, 731 So.2d 86, 86 (Fla. 3d DCA 1999). The facts of this case are much like those considered in Thomas and Stevens v. State, 599 So.2d 254 (Fla. 3d DCA 1992). We conclude, as the court did in Stevens, that “[hjowever inept and negligent [appellant’s] conduct, the record does not support the conclusion that [appellant] willfully or deliberately [violated his community control].” Stevens, 599 So.2d at 255; see also Thomas, 672 So.2d at 589.
We also agree with appellant’s contention that the trial court departed from its role of impartiality during the revocation hearing depriving him of due process of law. The record shows that the trial court repeatedly interrupted counsel and aggressively questioned appellant and the witnesses on matters which had not been raised by the state. The record supports appellant’s claim that the trial court’s actions and words indicated a predisposition towards a conviction, which deprived him of his right to an unbiased magistrate.
The judge must above all be neutral and his neutrality should be of the tough variety that will not bend or break under stress. He may ask questions to clarify the issues but he should not lean to the prosecution or defense lest it appear that his neutrality is departing from center. The judge’s neutrality should be such that even the defendant will feel that his trial was fair.
*774 Williams v. State, 143 So.2d 484, 488 (Fla.1962); see also McFadden v. State, 732 So.2d 1180 (Fla. 4th DCA 1999).
Accordingly, we reverse the violation of community control order. We remand for the trial court, upon issuance of this opinion, to forthwith assign this case to another judge (the present judge being the Chief Judge of the Seventeenth Circuit). The replacement judge shall conduct a hearing within five days to detennine appellant’s eligibility for probation and to enter an appropriate order immediately placing appellant on either probation or community control.
REVERSED and REMANDED.
POLEN and GROSS, JJ., concur.