POLEN, J.
The juvenile, M.A.L., appeals her adjudication of delinquency and commitment to a moderate risk residential program after the trial court found her guilty of violating her probation. The juvenile argues that the court erred in three respects: (1) conducting the disposition hearing at a sidebar conference outside of her and her father’s presence, thereby denying them the opportunity to be heard on this issue of disposition; (2) finding she violated a condition of her probation by using drugs based solely on hearsay testimony; and (3) failing to enter a written order specifying the conditions of probation that she was found to have violated. We agree with the juvenile on all three respects, and each issue will be addressed in turn. We reverse and remand for further proceedings.

Background

The juvenile, who was sixteen at the time, was charged as a principal with the fraudulent use of a credit card exceeding $100. She pled no contest to the charge, and the court withheld adjudication while imposing probation. Special conditions of her probation included community service, restitution, and counseling. Meanwhile, relevant mandatory conditions required her to attend school every day with no suspensions, live with a parent or guardian, abstain from alcohol and controlled substances, and comply with all laws.
Ten months later, the State filed an Affidavit/Petition for Violation of Probation (VOP), alleging that the juvenile: (1) committed the offense of “Fleeing or Elud *495 ing the Police and Stolen Property” in Michigan; (2) failed to live at home for a week, and associated with anti-social peers; (3) had multiple unexcused absences from school; and (4) tested positive for marijuana in April 2011, and refused to submit to a drug test the following month.
The trial court ordered a predisposition report (PDR) prepared and returnable to the parties. The Department of Juvenile Justice (DJJ) referred the juvenile for a comprehensive evaluation and prepared the PDR one month before the probation revocation hearing. A doctor completed the comprehensive evaluation in October 2011, at which time the juvenile had admitted using marijuana since the age of fifteen with her last use about a month prior. She tested positive for the drug in April 2011 and July 2011, and refused to be tested in May 2011. The DJJ concluded the juvenile had willfully committed the offenses and that her prior counseling had little impact on her behavior. The DJJ also concluded that she appeared to be a risk to public safety and required structure to address this issue. Finally, the DJJ recommended a commitment to a level 6 moderate risk residential program followed by conditional release.

Probation Revocation Hearing

At the November 2011 hearing, the State proceeded only on the technical violations against the juvenile as alleged in counts two, three, and four. The juvenile’s probation officer testified that probation began November 30, 2010, at which time the conditions of probation were read to the juvenile. The State then presented sufficient evidence upon which the trial court found that the juvenile had violated her probation as to counts two and three.
As to count four, over defense counsel’s hearsay objection, the probation officer testified that the juvenile tested positive for marijuana. This test was administered in April 2011 by a staff member of the Starting Place, a program which the juvenile had been assigned. A Starting Place therapist informed the probation officer of this positive test and that the juvenile refused to submit to a follow-up test in May 2011. The probation officer spoke with the juvenile, but did not testify to what, if anything, the juvenile said about these drug use allegations. The probation officer also received a urinalysis from the Starting Place, but did not testify whether or not it showed a positive result. The State did not introduce this urinalysis into evidence. The probation officer agreed the only way she knew about the refusal was from the Starting Place therapist.
The trial court noted that the juvenile had completed some of her probation requirements. However, the court revoked probation stating:
The bottom line is between hearsay and direct testimony, I find that this child has substantially violated her probation by not staying home, disappearing for a week, leaving the state, not going to school, and not being drug free.
The court did not enter a subsequent written order specifying the conditions of probation that were violated.

Disposition

After finding the violations of probation, the trial court stated, “Now that being said, I’m reading the PDR. May I have the attorneys up here please.” During a lengthy sidebar, outside of the presence of the child and her father, the court then discussed the PDR and the recommended disposition with the attorneys along with a DJJ representative. The court did not utilize the microphone and thus, the parties could not be heard.
Immediately upon conclusion of the sidebar, the trial court called the juvenile and *496 her father to come up. Without soliciting their comments on the proposed disposition, the court announced the probation revocation, the adjudication, and the commitment to a level 6 moderate risk residential program followed by conditional release in accordance with the DJJ’s recommendation. The court further ordered secure detention for five days pending release to the program. No post-disposition motions were filed.

Analysis

In her first issue on appeal, the juvenile argues that the trial court fundamentally erred when it conducted the disposition hearing at sidebar outside of the presence of her and her father. She claims that this sidebar conference violated her due process rights to be present and meaningfully heard prior to the disposition. The State responds that this issue was not preserved for review because no contemporaneous objection was made during the disposition hearing nor was any post-commitment motion filed afterward. Nevertheless, the State argues that any error was harmless. We agree with the juvenile because the trial court’s failure to give her and her father an opportunity to comment on the issue of disposition prior to its determination in accordance with section 985.433(4), Florida Statutes (2011), constituted fundamental error.
We review an unpreserved error in sentencing de novo. Josephs v. State, 86 So.3d 1270, 1272 (Fla. 4th DCA 2012) (citing Croom v. State, 36 So.3d 707, 709 (Fla. 1st DCA 2010)).
First, contrary to the State’s assertion that this issue is precluded from our review, the alleged error concerns the process through which the trial court determined the disposition and thus, a post-commitment motion under Florida Rule of Juvenile Procedure 8.135(b)(2) was not necessary. See Nawaz v. State, 28 So.3d 122, 124 (Fla. 1st DCA 2010) (noting that although a defendant challenging a sentencing error must generally file a motion under the rule governing correction of a sentencing error in order to raise fundamental error on appeal, if the error is not an error in the sentencing order, but rather an error in the sentencing process, the rule does not apply). Hence, we may review the disposition issue here for fundamental error because it involves a denial of due process. See Josephs, 86 So.3d at 1272 (holding we could review for fundamental error defendant’s unpreserved claim that the trial court relied on improper factors at sentencing).
Section 985.433(4), Florida Statutes (2011), which governs dispositional hearings in delinquency proceedings, requires that before a court determines and announces a disposition, it shall:
(a) State clearly, using common terminology, the purpose of the hearing and the right of persons present as parties to comment at the appropriate time on the issues before the court.
(b) Discuss with the child his or her compliance with any home release plan or other plan imposed since the date of the offense.
(c) Discuss with the child his or her feelings about the offense committed, the harm caused to the victim or others, and what penalty he or she should be required to pay for such transgression.
(d) Give all parties ... involved in the case who are present at the hearing an opportunity to comment on the issue of disposition and any proposed rehabilitative plan. Parties to the case shall include the parents, legal custodians, or guardians of the child; the child’s counsel; the state attorney; and representatives of the department.
*497 § 985.433(4), Fla. Stat. (2011)(emphasis added).
Additionally, “|l]ike criminal defendants, juveniles have a constitutional right to be present at all critical stages of the proceedings.” J.R. v. State, 953 So.2d 690, 691 (Fla. 1st DCA 2007); see also R.R. v. Portesy, 629 So.2d 1059, 1062 (Fla. 1st DCA 1994) (holding that Florida Rule of Juvenile Procedure 8.100(a) means that the accused child is required to be physically present at all hearings held under the juvenile rules, except when there has been a waiver of the right to be present made personally by the juvenile — not by the juvenile’s counsel — or the court makes specific findings regarding the child’s physical or mental condition that precludes physical presence).[1]
Here, upon conclusion of the sidebar where the disposition was discussed with counsel and a DJJ representative outside of the juvenile’s presence, the trial court immediately called the juvenile and her father to come forward. Without soliciting their comments on the issue, the court determined and announced the disposition. Therefore, because the juvenile did not personally waive her right to be present or heard during these discussions, the trial court’s failure to give the juvenile and her father an opportunity to comment on the issue of disposition prior to its determination constituted fundamental error. See § 985.433(4), Fla. Stat. (2011); see also B.R. v. State, 902 So.2d 333, 335 (Fla. 5th DCA 2005) (holding that trial court’s refusal to allow juvenile’s mother to speak at disposition hearing was reversible error); A.P. v. State, 666 So.2d 211 (Fla. 2d DCA 1995) (holding that the trial court’s refusal to allow juvenile or juvenile’s parents to address the court at disposition was reversible error).
We now move on to address the second issue. The juvenile next argues that the trial court erred in finding that she violated her probation by using drugs, claiming that the only evidence supporting this allegation was the probation officer’s hearsay testimony, which merely related what a representative from the testing agency had said. The State responds that the trial court did not err in deciding the issue, arguing that the juvenile’s own admission of recent marijuana use to the DJJ — documented in the PDR — was an admissible exception to the hearsay rule, which supported the otherwise inadmissible hearsay evidence. See § 90.803(18)(a), Fla. Stat. (2011) (providing an exception to the hearsay rule when a statement is offered against a party and is “[t]he party’s own statement in either an individual or a representative capacity”). We agree with the juvenile because the trial court’s finding that she violated her probation by using drugs was based solely on evidence consisting of the inadmissible hearsay testimony of her probation officer.
“To revoke probation, the conscience of the court must be satisfied that the State proved by a greater weight of the evidence that, under the totality of the circumstances, the probationer deliberately, willfully, and substantially violated a condition of his or her probation.” Shep *498 ard v. State, 939 So.2d 311, 313 (Fla. 4th DCA 2006). We review a trial court’s decision on violations of probation for an abuse of discretion. Ubiles v. State, 23 So.3d 1288, 1290-91 (Fla. 4th DCA 2010).
While hearsay that is normally inadmissible in a criminal trial may be admitted in VOP proceedings, it may not constitute the sole basis for finding a violation of probation. Thomas v. State, 711 So.2d 96, 97 (Fla. 4th DCA 1998). Such hearsay evidence may be used when combined with admissible evidence — such as evidence which is an exception to the hearsay rule — to establish the violation. Id. However, that admissible evidence must actually be admitted into evidence in the proceedings. M.M. v. State, 839 So.2d 881, 882 (Fla. 4th DCA 2003).
Here, the statement contained in the PDR, wherein the juvenile allegedly admitted that she had recently used marijuana while on probation, was never admitted into evidence either through the relevant DJJ representative or through the PDR itself during the hearing. Thus, the trial court’s finding that she violated her probation by using drugs was based solely on evidence consisting of the inadmissible hearsay testimony of her probation officer. See Sagner v. State, 776 So.2d 1088 (Fla. 4th DCA 2001) (revocation of probation cannot stand on hearsay evidence alone). The State failed to introduce any admissible evidence to support a finding that the juvenile failed to remain drug free while on probation and therefore, the trial court’s finding that she violated her probation on this count was an abuse of discretion.
Although the record contained sufficient evidence upon which the trial court found that the juvenile violated her probation on two other counts “by not staying home, disappearing for a week, leaving the state, [and] not going to school,” remand is appropriate for the trial court to reconsider the revocation matter and placement. See J.B. v. State, 84 So.3d 401, 402 (Fla. 4th DCA 2012) (holding that trial court’s finding that defendant violated a condition of probation was improperly based solely on hearsay evidence and remanding for the trial court to reconsider whether it would have imposed the same sentence if faced with only the remaining, supported violation); Davis v. State, 33 So.3d 747, 748-49 (Fla. 4th DCA 2010) (holding that the evidence was insufficient to establish defendant violated one of the terms of his probation and remanding for the trial court to reconsider whether it would have still revoked his probation and imposed the same penalty based on the remaining violation).
Finally, in her last issue on appeal, the juvenile argues that due process requires the entry of a formal, written statement of the specific conditions of her probation that the trial court found she violated. We agree.
“If a trial court revokes a defendant’s probation, the court is required to render a written order noting the specific conditions of probation that were violated.” Robinson v. State, 74 So.3d 570, 572 (Fla. 4th DCA 2011) (quoting King v. State, 46 So.3d 1171, 1172 (Fla. 4th DCA 2010)). “If a formal, written order does not exist, it is appropriate to remand for entry of a proper order....” Id. (citation omitted).
Here, although the record is clear as to which conditions the court found the juvenile to have violated, we have likewise made clear that there are no exceptions to this written order rule. See A.T.J.F. v. State, 78 So.3d 57 (Fla. 4th DCA 2012) (stating, “the record contains only disposition orders, so we remand to the trial court for entry of a written order of revocation of probation specifying the condi *499 tions appellant was found to have violated”).
For the forgoing reasons, we hold that the trial court’s failure to give the juvenile and her father an opportunity to comment on the issue of disposition prior to its determination constituted fundamental error. We reverse the trial court’s finding that the juvenile violated a condition of her probation by using drugs. Accordingly, we remand for the trial court to reconsider whether it would have imposed the same disposition if faced only with the remaining two supported violations. Additionally, the court shall enter a written order of revocation of probation specifying the conditions the juvenile was found to have violated.

Reversed and remanded for proceedings consistent with this opinion.

CONNER, J., and KEYSER, JANIS BRUSTARES, Associate Judge, concur.

. We do not construe rule 8.100(a) to preclude the trial court from discussing certain matters at sidebar with the child's attorney present, but out of the hearing of the child. Although juvenile disposition hearings should for the most part be conducted in the same fashion as adult sentencing hearings, there are times when dealing with children that sensitive things need to be discussed about the child which may be emotionally damaging for a child to hear in a public forum. Juvenile judges need to be fully informed about circumstances relating to the child, and there may be family dynamics or concerns that are simply inappropriate to discuss with or in front of a child.