DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

D.D.R.,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2024-2537
_____

February 6, 2026

Appeal from the Circuit Court for Pasco County; James R. Stearns,
Judge.

Blair Allen, Public Defender, and Tosha Cohen, Assistant Public
Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Tayna Alexander,
Assistant Attorney General, Tampa, for Appellee.

SLEET, Judge.

D.D.R. appeals the juvenile disposition order revoking probation
and adjudicating her guilty of the delinquent act of criminal mischief, a
second-degree misdemeanor, which she committed on March 3, 2022.
The court sentenced her to commitment in a moderate risk facility.  On
appeal, D.D.R. argues that the trial court erred in revoking her probation
based solely on hearsay evidence.  Because the State failed to present

any corroborating nonhearsay evidence to support the trial court's finding that D.D.R. broke curfew and violated her probation, we reverse.

## I.     BACKGROUND

On June 3, 2022, D.D.R. pleaded guilty to criminal mischief. The trial court withheld adjudication and placed her on probation for two years. However, she violated her probation, and on October 28, 2022, the trial court revoked her probation and imposed another year of probation. On August 18, 2023, after again violating her probation, D.D.R. was placed on probation until her nineteenth birthday. As part of her probation, she was to abide by a 6:00 p.m. to 6:00 a.m. curfew, submit to random searches and drug tests, and cooperate with placement and individual counseling. However, on May 17, 2024, the State filed a petition for violation of probation (VOP) alleging that D.D.R. broke curfew on nineteen specified dates.[1] The State also alleged that D.D.R. tested positive for marijuana on September 29, 2023; that she failed to attend school with no lates, skips, or discipline referrals on October 5, 2023; and that she failed to comply with the rules of her placement on October 7, 2023, March 11, 2024, and March 16, 2024.

On October 24, 2024, the trial court held a revocation hearing and called five witnesses, beginning with D.D.R. When the State questioned if D.D.R. violated her curfew, she asked "[w]hen?" The State responded, "[D]id you violate your curfew at any point while you were on probation?" She answered, "I'm going to say when I was in foster care, yes, I did."

---

[1] The State alleged that she broke her curfew on August 18, 2023; August 19, 2023; August 20, 2023; August 21, 2023; September 12, 2023; September 13, 2023; September 14, 2023; September 15, 2023; September 20, 2023; September 21, 2023; September 23, 2023; October 3, 2023; October 5, 2023; October 8, 2023; January 2, 2024; January 7, 2024; January 9, 2024; January 10, 2024; and April 18, 2024.

The State did not then follow up with questioning her about any particular dates or the time frame during which she was in foster care. Instead, the State continued with questioning and asked if, on October 5, 2023, she violated the condition that required her to attend school full-time with no lates, skips, or excused absences or referrals. She stated that she did not think she did and that she made a good faith effort in school. Then, when asked if she submitted to a drug screen on September 29, 2023, that resulted in a positive test for marijuana, she stated that she did not know the dates of her screenings but that she did not test positive for the past couple times she had taken the drug tests. Again, the State did not attempt to follow up on her responses to the school or drug questions.

The State then called juvenile probation officer Janet Lopes as a witness. Over a hearsay objection, Lopes testified that she received emails and text messages from others that stated D.D.R. ran away from her placement on August 18, 2023, January 2, 2024, January 7, 2024, January 9, 2024, and January 10, 2024. She did not personally observe D.D.R. violating curfew on any of the dates in question. Rather, D.D.R.'s placement told her case manager, who then told Lopes about it.

Next, the State called D.D.R.'s former case manager Emily Ashkenase. Ashkenase could not recall exact dates but said that D.D.R. had ongoing behavior issues at times. She stated that D.D.R. would leave her placement without permission and be gone for hours at a time before returning, failed to put forth a good effort at school, would cause disruptions in school or refuse to go or would not participate in classroom procedures, and violated her curfew multiple times. However, Ashkenase did not personally observe any of these violations. Rather, someone at D.D.R.'s placement told her that D.D.R. had broken curfew

3

and school staff told her that D.D.R. was not participating. And notably, the State did not call anyone from D.D.R.'s placement or the school staff to testify as to their personal observations.

Next, the State called D.D.R.'s dependency case manager Rachel Colvin. Colvin testified over hearsay objection that it was reported to her that on April 18, 2024, D.D.R. cut her ankle monitor and ran. She did not personally observe D.D.R. cut the electronic monitor or leave her placement. Rather, she only knew about the incident because someone else told her.

Last, the State called Dequasia Miller, a staff member at Providence House, the group home where D.D.R. resided. Miller testified that she saw photos and videos of D.D.R. holding a bottle of alcohol. However, she did not know when the photos and videos were taken. She also testified that D.D.R. had broken her curfew but that she did not personally observe D.D.R. coming back home late. Rather, she learned about it through a group chat. She stated that she saw D.D.R. leave the home one day at "like 2:00 or 3:00" and that D.D.R. was not at the home the following morning when Miller was there. However, she admitted that she did not know the dates that D.D.R. broke curfew.

D.D.R. argued that because the State relied solely on hearsay evidence, it failed to show by a preponderance of the evidence that D.D.R. in fact violated her probation. The trial court noted D.D.R.'s concerns regarding hearsay evidence but ultimately ruled as follows:

> [T]his court is concentrating its ruling as it relates to Ms. Miller's testimony and her personal observations of [D.D.R.] failing to return home, not that she was there when she returned, but she was at the group home when she was not present and had absconded the night before, around 2:00 or 3:00 in the afternoon it appears, and that she in fact broke a condition of her probation.

4

The court then issued its disposition order, which did not specify the conditions of probation that D.D.R. violated, revoked her probation, and placed her in a moderate risk facility. This appeal ensued.[2]

## II.    ANALYSIS

On appeal, D.D.R. argues that the trial court erred in finding that she violated her probation where the finding was based solely on hearsay evidence. We agree.

"While hearsay that is normally inadmissible in a criminal trial may be admitted in [violation of probation] proceedings, it may not constitute the sole basis for finding a violation of probation." *D.D. v. State*, 271 So. 3d 1176, 1177 (Fla. 3d DCA 2019) (alteration in original) (quoting *M.A.L. v. State*, 110 So. 3d 493, 498 (Fla. 4th DCA 2013)); *see also Gaddy v. State*, 23 So. 3d 1258, 1259 (Fla. 2d DCA 2009) ("A trial court may consider hearsay testimony at a violation of probation hearing. But, hearsay may not be the sole basis supporting a ground for revocation." (citation omitted)).

Here, in finding that D.D.R. violated her probation, the trial court relied on Miller's testimony and her personal observations while working

---

[2] During the course of the appeal, D.D.R. filed a motion to correct sentencing error alleging that her sentence was illegal because the criminal mischief charge for which she was sentenced was a second-degree misdemeanor punishable only by up to sixty days in county jail and her sentence was an indeterminate amount of months until her nineteenth birthday. She also alleged that the order incorrectly stated that she was tried and found guilty when in fact the case involved a plea. The trial court granted the motion, concluding that the sentence was illegal. However, while the order includes the correct circuit court case number, it appears to incorrectly state that D.D.R. was on probation for trespass in this case when it should have been criminal mischief. Regardless, because both charges are second-degree misdemeanors, the trial court's reasoning would likely be the same and it appears to be a scrivener's error.

at the group home at which D.D.R. resided. However, Miller's observations do not prove that D.D.R. broke her curfew. The extent of Miller's testimony was that she observed D.D.R. leave the home at "like 2:00 or 3:00" and that D.D.R. was not at the home the following morning when Miller was there. D.D.R. had to abide by a 6:00 p.m. to 6:00 a.m. curfew, so she left the home before her curfew began. But Miller did not testify as to when she finished her job that day or when she started the next morning in order to establish whether D.D.R. was at the home during her curfew hours. If Miller finished her job at 5:00 p.m. and returned the following day at 9:00 a.m., it is possible that D.D.R. abided by her curfew by coming home before 6:00 p.m. and leaving the following morning between 6:00 a.m. and 9:00 a.m. before Miller returned to work such that Miller did not see D.D.R. the following morning. However, without any follow-up questions regarding Miller's work hours, we cannot assume that just because D.D.R. left the home around 2:00 or 3:00 p.m. that she violated her curfew.

Furthermore, "[w]hen a VOP petition alleges that a defendant has committed a VOP on a specific date, the State must present evidence showing that the VOP occurred on that specific date as opposed to some undetermined date." *J.T.J. v. State*, 353 So. 3d 1175, 1179 (Fla. 4th DCA 2022); *see also Cherington v. State*, 24 So. 3d 658, 661 (Fla. 2d DCA 2009) (holding that it was error to find a probation violation where the defendant had admitted to possessing and using cocaine on some undetermined date rather than on the date specified in the affidavit of violation). Here, Miller admitted that she did not know the dates that D.D.R. allegedly broke curfew. Therefore, even if we were to assume that D.D.R. left the home around 2:00 or 3:00 p.m. and did not return until some point after her curfew, the State still did not present any evidence

6

that D.D.R. violated her curfew on any of the nineteen dates alleged in the VOP petition.

Apart from Miller's testimony, the only other nonhearsay evidence that could potentially support the trial court's finding was from D.D.R. herself. The State questioned if she violated her curfew, and when she sought clarification as to when, the State responded, "[D]id you violate your curfew at any point while you were on probation?" She answered, "I'm going to say when I was in foster care, yes, I did." However, the State did not have D.D.R. clarify, nor did it otherwise offer any other evidence, as to when she was in foster care in order to establish that she was in foster care during her current probationary period as opposed to a prior period. Furthermore, the State failed to follow up and ask D.D.R. about the specific dates alleged in the VOP petition. Therefore, D.D.R.'s admission is immaterial as it does not establish that she violated her curfew on any of the nineteen dates alleged in the VOP petition.

Because neither Miller nor D.D.R. testified as to the specific date on which she allegedly broke her curfew and the only other evidence of specific dates came from hearsay testimony, the State failed to present any corroborating nonhearsay evidence to support the trial court's finding that D.D.R. broke curfew and violated her probation. *See Cherington*, 24 So. 3d at 661. Accordingly, we reverse.

Reversed.

ROTHSTEIN-YOUAKIM and ATKINSON, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

7