569 So.2d 1251 (1990)
Jesus SCULL, Appellant,
v.
STATE of Florida, Appellee.
No. 73687.
Supreme Court of Florida.
November 8, 1990.
Calianne P. Lantz, Sp. Asst. Public Defender, Miami, for appellant.
Robert A. Butterworth, Atty. Gen., and Ralph Barreira, Asst. Atty. Gen., Miami, for appellee.
KOGAN, Justice.
Jesus Scull appeals from a resentencing hearing in which the trial court imposed a sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
*1252 The facts of this case are recited in Scull's first appeal to this Court. Scull v. State, 533 So.2d 1137 (Fla. 1988), cert. denied, 490 U.S. 1037, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989). There, we found the trial court's initial sentencing order "replete with error" and remanded for a new sentencing proceeding. Id. at 1143-44. Before it had even received this Court's mandate, however, the trial court below held the new proceeding on December 28, 1988, during the Christmas holidays, only three weeks after we denied rehearing. Since it was error to conduct the hearing before receipt of the mandate, the trial court held a second hearing on December 30, 1988, after the mandate had arrived.
Scull's counsel was taken by surprise by this rush to resentence her client. Returning from a Christmas vacation on December 27, 1988, she learned of the resentencing hearing and telephoned the prosecutor to obtain an explanation. The prosecutor apparently stated that the trial judge was leaving his job and did not wish to "dump" this case on his replacement. The state now concedes that this, in fact, was the trial court's motive.
As a result of this conversation, Scull now asserts that the trial court engaged in ex parte communications with the prosecutor.
After learning of the sudden scheduling of the resentencing, Scull's counsel made a series of motions. She filed a motion asking the trial judge to recuse himself because of alleged prejudice. This prejudice was evinced, she argued, by the trial court's haste in resentencing Scull and by his referring to Scull as a "psychopath" in the first sentencing. Defense counsel also filed a motion for a continuance seeking further time to prepare, and for a one-day stay to file a petition for writ of prohibition in this Court. All motions were denied, and the trial court subsequently resentenced Scull to death. Scull now alleges that the trial court's haste to resentence him violated his due process rights.
We agree that the trial court's haste in resentencing Scull violated his due process rights. One of the most basic tenets of Florida law is the requirement that all proceedings affecting life, liberty, or property must be conducted according to due process. Art. I, § 9, Fla. Const. While we often have said that "due process" is capable of no precise definition, e.g. Gilmer v. Bird, 15 Fla. 410 (1875), there nevertheless are certain well-defined rights clearly subsumed within the meaning of the term.
The essence of due process is that fair notice and a reasonable opportunity to be heard must be given to interested parties before judgment is rendered. Tibbetts v. Olson, 91 Fla. 824, 108 So. 679 (1926). Due process envisions a law that hears before it condemns, proceeds upon inquiry, and renders judgment only after proper consideration of issues advanced by adversarial parties. State ex rel. Munch v. Davis, 143 Fla. 236, 244, 196 So. 491, 494 (1940). In this respect the term "due process" embodies a fundamental conception of fairness that derives ultimately from the natural rights of all individuals. See art. I, § 9, Fla. Const.
We believe that the totality of events leading up to the resentencing of Scull in this instance violated these basic requirements of due process. As the state concedes in its brief, "[t]here is no question that the defendant's counsel was rushed into the resentencing upon her return from vacation." Haste has no place in a proceeding in which a person may be sentenced to death. Thus, we cannot agree with the state's assertion that the trial court's "rush" to resentence resulted in no prejudice to Scull.
Here, the appearance of irregularity so permeates these proceedings as to justify suspicion of unfairness. This, we believe, is as much a violation of due process as actual bias would be. Accordingly, we must vacate the sentence and remand for another sentencing hearing in compliance with this opinion and with the dictates of due process. The other issues raised by Scull as well as the state's cross appeal are rendered moot by this decision, and accordingly we do not address them.
It is so ordered.

*1253 ON PETITION FOR CLARIFICATION
The state petitions this Court to clarify the above opinion. We grant the petition, readopt the opinion above, and attach the following clarification to it.
On remand there will be no need of empaneling a new penalty-phase jury. The new proceedings will be before the judge. This is because the errors that required the present remand occurred after the penalty-phase jury already had completed its deliberations and made its recommendation. Obviously, these errors did not taint the jury's advisory role below.
At the penalty phase on remand, the defendant will be entitled to present to the judge any new mitigating evidence he wishes and also will be entitled to rely upon any other mitigating evidence available in the record as it now exists. Likewise, the state will be entitled to present any new aggravating evidence it wishes and also may rely upon aggravating factors already established in the present record. If mitigating or aggravating evidence already exists in this record, there will be no need of either the defense or the state reproducing it through "live" testimony before the judge on remand. Both sides may rely upon the transcripts to this end.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, EHRLICH, BARKETT and GRIMES, JJ., concur.