DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BRIAN HARRINGTON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-1084

[February 21, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jack Schramm Cox, Judge; L.T. Case No. 1997CF 011373AMB.

Antony P. Ryan, Regional Counsel, and Richard G. Bartmon, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Joseph D. Coronato, Jr., Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Brian Harrington appeals from the trial court's final order revoking probation for his failure to complete a sexual offender treatment program, a condition of his probation. He argues that the trial court's finding of a willful and substantial violation of probation is not supported by competent, substantial evidence. Appellant also argues, and the State agrees, that the trial court failed to hold a required sentencing hearing following the finding of a violation of probation. As discussed below, we affirm the trial court's determination that there was a willful and substantial violation, but reverse and remand for a proper sentencing hearing.

**Background**

Pursuant to a guilty plea to three counts of sexual activity with a child, Appellant was sentenced to prison in 1998 to three concurrent sentences of ten years in prison. After serving eight years of the sentence, he was

released and placed on probation. One of the conditions of Appellant's probation was that he complete a sexual offender treatment program.

In late 2013, the initial sexual offender treatment program to which Appellant was assigned was closed after six years. Appellant was transferred to the Comprehensive Outpatient Recovery, Treatment and Evaluation, Inc. (CORTE) program to attend treatment once a week in a group therapy setting led by Dr. Johnson. At the end of each month that Appellant was enrolled in CORTE, a progress report was prepared and sent to Appellant's probation officer detailing his participation, motivation, attitude, attendance, and any other relevant information. These progress reports allowed for four possible ratings: 1) Excellent, 2) Satisfactory, 3) Marginal or Borderline, and 4) Poor or Unacceptable.

The stated purpose of the group therapy was to create a safe environment in which the participants could share experiences, discuss and prevent triggers, and talk about what was happening in their lives. An expert in sexual offender treatment, testifying as a defense witness, described this group therapy as an "ebb and flow" process, stating patients would have good and bad days and that what was most crucial for success was to get them to "engage" and "buy in" to the program.

Appellant's initial reluctance to fully participate at group therapy sessions in CORTE earned him "marginal" or "poor" ratings in attitude and motivation during his first three months in this program; however, he subsequently was deemed to have improved his behavior and he received higher, "satisfactory" ratings. Dr. Johnson acknowledged in her testimony that group therapy patients normally experience a difficult initial adjustment period, requiring time to become comfortable and non-hostile and to trust the therapy and therapist.

By his sixth month in CORTE, Appellant was receiving "satisfactory" appraisals in all respects, which he successfully maintained for six consecutive months, and Dr. Johnson's reports suggest Appellant's successful participation in therapy during that timeframe, with improved behavior and apparent "buy in" to the therapeutic program. The reports further noted that Appellant was "increasingly receptive" to group therapy, contributing in "increasingly productive" ways, and was "meaningfully engaged." These contemporaneous comments and ratings notwithstanding, Dr. Johnson testified that there was hesitation in giving Appellant these ratings and that "he was superficially engaged since his enrollment" in CORTE, had a negative attitude during meetings, was both challenging and resistant, and had failed to actively participate on

numerous occasions. Dr. Johnson was also critical of Appellant's failure to disclose a relationship he was engaged in with another group member.

During Appellant's final six weeks in CORTE, his participation and attitude toward treatment and the group regressed, and he reverted to behavior similar to when he began the CORTE program. Dr. Johnson and Appellant's expert witnesses provided testimony linking this regression to a situation involving the death of Appellant's father and what the defense experts perceived as Dr. Johnson's mishandling of the situation. Dr. Johnson conceded that this situation was a "clinically significant event" for Appellant.

Appellant was ultimately discharged from the CORTE group. Dr. Johnson did not refer him to another group or offer additional counselling to him. Dr. Johnson's discharge summary stated Appellant was terminated from the program for two principal reasons: willful treatment resistance and ongoing disruption of the treatment process for other members.

Despite his discharge, Appellant nevertheless continued to attend the group meetings for two or three more weeks. However, as a consequence of his discharge from the treatment group, the State asserted that he had violated his probation for failing to complete all recommended treatment. The trial court agreed, relying upon Dr. Johnson's testimony and conclusions, in finding Appellant willfully and substantially violated his probation by "consistently resisting treatment, failing to successfully complete treatment, and being discharged from sexual offender treatment." Without holding a second hearing focused on the appropriate sentence in the wake of the violation, the trial court sentenced Appellant to nearly forty-two years in prison for this violation of probation.

**Analysis**

*A. Violation of Probation*

"The trial court has broad discretion to determine whether there has been a willful and substantial violation of a term of probation and whether such a violation has been demonstrated by the greater weight of the evidence." *State v. Carter*, 835 So. 2d 259, 262 (Fla. 2002); *see also Mata v. State*, 31 So. 3d 257, 259 (Fla. 4th DCA 2010) (the State must prove by a preponderance of the evidence the probationer willfully and substantially violated the terms of probation).

3

"'When a decision in a non-jury trial is based on findings of fact from disputed evidence, it is reviewed on appeal for competent, substantial evidence' because 'the trial judge is in the best position to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor and credibility of the witnesses.'" *Oertel v. State*, 82 So. 3d 152, 156-57 (Fla. 4th DCA 2012) (quoting *Acoustic Innovations, Inc. v. Schafer*, 976 So. 2d 1139, 1143 (Fla. 4th DCA 2008)).

If a revocation is based on failure to complete a rehabilitation program, there must be a showing that the probationer was responsible for such failure. *See Rainer v. State*, 657 So. 2d 1230, 1230 (Fla. 4th DCA 1995). As such, "reasonable efforts to comply with a condition of probation cannot be deemed a willful violation." *Odom v. State*, 15 So. 3d 672, 675 (Fla. 1st DCA 2009); *see also Thomas v. State*, 672 So. 2d 587, 589 (Fla. 4th DCA 1996) ("If a probationer makes reasonable efforts to comply, his failure will not be considered willful.").

Following his placement on probation, Appellant was successful in a program for over six years prior to the transfer to the CORTE program. However, by Dr. Johnson's account, Appellant "was superficially engaged since his enrollment" in CORTE, did not fully dedicate himself to the program, and his failure was willful and not the product of circumstances beyond his control. Supporting that conclusion was testimony that Appellant had a negative attitude during meetings, was both challenging and resistant, and had failed to actively participate on numerous occasions. In his final progress report, Appellant received a "poor" rating in participation, a "borderline" score in motivation, and an "unacceptable" rating in attitude. His group leader, Dr. Johnson, described Appellant as "more argumentative, more hostile, increasingly disruptive . . . not receptive to any of the feedback regardless of who was providing it or the format that it was provided in." As noted above, Dr. Johnson's discharge summary stated Appellant was terminated from the program for two principal reasons: *willful* treatment resistance and *ongoing disruption* of the treatment process for other members.

Although there was a great deal of testimony from Appellant's expert witnesses that questioned the treatment and observations of Dr. Johnson, she was the sole witness who directly observed Appellant during his one-year treatment in CORTE and the trial court afforded substantial reliance to her observations and conclusions in determining there was a willful violation of the terms of Appellant's probation. Hence, under our standard of review, we affirm the trial court's holding that Appellant violated probation. *See Savage v. State*, 120 So. 3d 619, 622 (Fla. 2d DCA 2013) ("The competent substantial evidence standard defers to the trial court's

4

judgment because the trial court is in the best position 'to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor and credibility of the witnesses.'" (quoting *In re Estate of Sterile*, 902 So. 2d 915, 922 (Fla. 2d DCA 2005))).

### B. Revocation of Probation

In the same "Order finding Violation of Probation," the trial court, "[b]ased on the willful and substantial violation, and the nature and severity of the underlying charged crimes," revoked Appellant's probation and sentenced him to nearly forty-two years in prison (with credit for time served). It did so without holding a separate sentencing hearing.

We review a trial court's decision to revoke probation for an abuse of discretion. *Grace v. State*, 198 So. 3d 945, 947 (Fla. 4th DCA 2016); *M.A.L. v. State*, 110 So. 3d 493, 498 (Fla. 4th DCA 2013). "If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." *Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980). Trial courts are granted "broad discretionary power" to both "grant the privilege of probation" and to revoke it. *Lawson v. State*, 969 So. 2d 222, 229 (Fla. 2007). "Although the power of the trial court in the area of probation revocation is broad and extensive, it 'is not unbridled and should not be arbitrarily exercised.'" *Id.* (quoting *State ex rel. Roberts v. Cochran*, 140 So. 2d 597, 599 (Fla. 1962)).

Upon finding a violation of probation, the court must decide whether to revoke, modify, or continue the probation. *See* § 948.06(2)(e), Fla. Stat. (2016). The Second District Court of Appeal characterizes this as "*Step Two*" of the process. *Savage*, 120 So. 3d at 623. If the trial court choses revocation, it may "impose any sentence it might have originally imposed before placing the probationer or offender on probation or into community control." § 948.06(2)(e). As discussed in *Estevez v. State*, 705 So. 2d 972 (Fla. 3d DCA 1998), the consideration of and determination as to whether to revoke probation is a process separate from a violation hearing:

> In *Black v. Romano*, 471 U.S. 606 (1985), the Supreme Court stated:
>
>> In identifying the procedural requirements of due process, we have observed that the decision to revoke probation typically involves two distinct components:

> (1) a retrospective factual question whether the probationer has violated a condition of probation; and
>
> (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation of probation.

*Id.* at 611 (citations omitted).

> The Court went on to say that "the final revocation of probation must be preceded by a hearing," *id.*, at which the defendant must have, among other things, "an opportunity to be heard in person. . . ." *Id.* at 612. This means that the defendant must have an opportunity to be heard on both issues: (1) whether defendant has violated a condition of probation, and (2) what sentence should be imposed. This hearing may be informal in nature, but there must be a reasonable opportunity to be heard. *See id.* at 614 (where the court has sentencing discretion, probationer must have an opportunity to present mitigating evidence and argue for sentencing alternatives); *Scull v. State*, 569 So. 2d 1251, 1252 (Fla. 1990); *McCloud v. State*, 653 So. 2d 453, 455 (Fla. 3d DCA 1995); ABA Standards for Criminal Justice, Standard 18-7.5(d)(iii), (e)(iv).

*Estevez*, 705 So. 2d at 973 (alterations in original) (citations omitted).

In the instant case, Appellant was afforded a hearing as to whether he violated a condition of probation. As the State concedes, he was not afforded a hearing as to what sentence should be imposed. On remand, following a secondary hearing as discussed in *Black* and *Estevez*, the trial court is to first determine whether to revoke, modify or continue Appellant's probation. If the court chooses the revocation option, it must then determine the appropriate sentence, and set forth the reasons for revoking probation in a written order. *Defrank v. State*, 886 So. 2d 253, 253-54 (Fla. 4th DCA 2004) (citing *Black*, 471 U.S. at 612).[1]

## Conclusion

---

[1] In his initial brief, Appellant requests a different judge for the revocation hearing. The initial trial judge retired subsequent to this judgment. Therefore, the issue is moot.

Although there was mixed evidence as to both the willfulness and the extent (substantial or less-than-substantial) of Appellant's failure/inability to remain in the CORTE program (a condition of Appellant's probation), "the evidence relied upon to sustain the ultimate finding [was] sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached." *De Groot v. Sheffield*, 95 So. 2d 912, 916 (Fla. 1957). Accordingly, we affirm the trial court's judgment finding Appellant in violation of his probation.

We remand to the trial court for a hearing on whether revocation, modification or continuation of Appellant's probation is the appropriate course of action and, if either revocation or modification is selected, the contours of any sentence imposed. While we take no position on what the trial court's ultimate decision should be, it should afford due consideration of Appellant's record during his earlier prison sentence and in his first six years on probation, along with the mixed record during his time in the CORTE program, including any issues that may have contributed to Appellant's unsatisfactory conduct immediately preceding the termination of his group therapy enrollment.

*Affirmed in part and Reversed and Remanded in part.*

CONNER and KLINGENSMITH, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

7