NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

TIMOTHY TURNER,                      )
                                     )
         Appellant,                  )
                                     )
v.                                   )          Case No.  2D16-3474
                                     )
STATE OF FLORIDA,                    )
                                     )
         Appellee.                   )
_____)

Opinion filed December 19, 2018.

Appeal from the Circuit Court for Polk
County; Glenn T. Shelby, Judge.

Anthony W. Surber of Surber Law P.A.,
Mulberry, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Katie Salemi Ashby,
Assistant Attorney General, Tampa, for
Appellee.


LaROSE, Chief Judge.


        "The young man knows the rules, but the old man knows the exceptions."

Oliver Wendell Holmes, Sr., *Valedictory Address, Delivered to the Graduating Class of

the Bellevue Hospital College, March 2, 1871*, 13 N.Y. Med. J. 420, 426 (1871).  Dr.

Holmes' wisdom underscores the fact that, sometimes, bright-line rules do not burn so

brightly.  So it is for Timothy Turner.

The trial court sentenced Mr. Turner to life imprisonment after revoking his community control. On appeal, Mr. Turner argues that under the "bright line" rule of Norvil v. State, 191 So. 3d 406, 410 (Fla. 2016), "a trial court may not consider a subsequent arrest without conviction during sentencing for the primary offense." He contends that the trial court did just that by hearing evidence about his pending new law violations that occurred during his arrest for violating community control.

Norvil's bright line rule is inapplicable here. We conclude that the trial court may consider the facts underlying the new law violations in assessing whether to revoke community control and to tailor an appropriate sentence upon revocation. Although we affirm, we remand for correction of a scrivener's error in the revocation order.

## Background

A jury convicted Mr. Turner of second-degree murder; the trial court imposed a life sentence. Following a successful postconviction motion, Mr. Turner's conviction was vacated. Thereafter, he and the State negotiated a sentence of eighteen years' imprisonment, with credit for time already served, followed by two years of community control.

Eventually, Mr. Turner was released to community control. After roughly four months, the State filed a violation of community control affidavit alleging that Mr. Turner failed to submit to urinalysis, improperly changed his residence, and failed to remain confined to his residence. In an amended violation affidavit, the State alleged that Mr. Turner also committed several new law violations, all of which were discovered or precipitated by law enforcement's attempts to arrest him. More specifically, the

amended violation affidavit stated that Mr. Turner violated his community control by being arrested for burglary with assault or battery, resisting officers without violence, and various drug-related offenses.

Mr. Turner admitted to each of the violations. The trial court scheduled another hearing where the State and Mr. Turner could call witnesses as to the issues of revocation and sentencing.

At that later hearing, several witnesses testified about the aggravated nature of the new law violations. Law enforcement officers detailed their efforts to execute the arrest warrant issued for the original violation affidavit. They testified that Mr. Turner tried to flee by pushing out a window screen from the back of his residence. He fled to a neighbor's house where he ran through a glass door. He ran into the neighbor's bedroom, knocked down the unwitting neighbor, tried to conceal himself, and ultimately jumped out of her bedroom window. Law enforcement apprehended Mr. Turner outside of the neighbor's house and discovered a sack of drugs and drug paraphernalia in his pocket.

A licensed psychologist testified for Mr. Turner. She diagnosed him with "Posttraumatic Stress Disorder, Bipolar Disorder, and also Panic Disorder. [She] also diagnosed him with . . . Stimulant Use Disorder with respect to his use of amphetamine." The psychologist further described the physical, sexual, and emotional violence Mr. Turner suffered growing up. She stated that Mr. Turner "[ha]s a severe drug problem," and that at the time he committed the new law violations, "he related that he had been using methamphetamine daily."

At the conclusion of the testimony, the parties presented argument as to the proper disposition. Mr. Turner requested that the trial court modify his community control "to include a residential dual diagnosis treatment center." The State requested the revocation of Mr. Turner's community control and imposition of a life sentence. The trial court agreed with the State:

> Based on everything I've reviewed that's been submitted to the court, the defendant's past history, everything I've heard today, my conclusion, Mr. Turner, is that you have problems but you're dangerous. People have been hurt. People continue to be hurt by your conduct. I just can't get past that.
>
> Your entire history is replete with crimes of violence at various points in your history to a greater or lesser extent and for the protection of everyone I agree with the State's position in this matter. You were previously adjudicated. I find you in violation of your community control. I revoke your community control. You're sentenced to life in prison.

The trial court later entered a written revocation order.

## Analysis

Mr. Turner maintains that the trial court erred in sentencing him based upon its consideration of the pending new law violations. He relies principally on Norvil, which "adopt[ed] the following bright line rule for sentencing purposes: a trial court may not consider a subsequent arrest without conviction during sentencing for the primary offense." Id.; see, e.g., Fernandez v. State, 212 So. 3d 494, 495 (Fla. 2d DCA 2017) ("Based on the supreme court's decision last year in [Norvil], we are required to reverse his sentence because the trial court improperly considered Mr. Fernandez's arrest for an

alleged offense committed while he was on pretrial release on the possession charge.").[1]

In Norvil, the trial court considered an arrest subsequent to the primary offense in sentencing the defendant. 191 So. 3d at 408. The Florida Supreme Court ruled that the Criminal Punishment Code (CPC) did not permit such consideration. Id. at 409. Holding that the trial court could not consider sentencing factors not authorized in the CPC, the court concluded that trial courts should consider only prior arrests and convictions, and not mere arrests subsequent to the charged crime. Id. ("[A]rrests and convictions considered by a trial judge in sentencing occur 'prior to the time of the primary offense,' and not subsequent to the primary offense." (quoting § 921.0021(5), Fla. Stat. (2010)); see also § 921.231(1)(c), Fla. Stat. (1998) (providing that a presentence investigation report include "[t]he offender's prior record of arrests and convictions").

Even before Norvil, we held that a trial court may not consider for sentencing the details of pending charges that occurred after the primary offense. See Mosely v. State, 198 So. 3d 58, 59–60 (Fla. 2d DCA 2015) (holding that incidents of misconduct occurring after the charged offense, some of which did not result in charges or arrests, were impermissible sentencing factors); Gray v. State, 964 So. 2d 884, 885 (Fla. 2d DCA 2007) (reversing the defendant's sentence because the trial court improperly considered the details of pending charges); see also State v. Potts, 526 So.

---

[1]Mr. Turner did not object to the testimony about his new law violations. Nonetheless, we may consider his argument, de novo, on appeal. Norvil, 181 So. 3d at 408; Love v. State, 235 So. 3d 1037, 1039 (Fla. 2d DCA 2018) ("This court held that the type of error addressed in Norvil is fundamental error that may be considered on appeal despite a lack of objection below." (citing Fernandez, 212 So. 3d at 496)).

2d 63, 63 (Fla. 1988) ("The state through its criminal process may not penalize someone merely for the status of being under indictment or otherwise accused of a crime."). One of our sister districts has determined that, even in the absence of the submission of evidence of a pending charge, reversal of a defendant's sentence is required "when the court repeatedly emphasized the charged conduct during the sentencing hearing, indicated that it believed the conduct occurred, and appeared to rely on the conduct, in part, to justify the sentence." Brown v. State, 225 So. 3d 947, 948 (Fla. 5th DCA 2017).

Mr. Turner contends that because he admitted to the violations, "there was no evidentiary hearing held to prove the new law violations by 'the greater weight of the evidence.' " See Savage v. State, 120 So. 3d 619, 621 (Fla. 2d DCA 2013) (observing that at a revocation hearing the State must "prove[] by the greater weight of the evidence that the probationer willfully and substantially violated probation"). He argues that he did not admit guilt as to any of the new pending charges; rather, he only admitted a new law violation as he was only arrested for those charges. At the time of sentencing, the new law violation charges were set for trial.

Ordinarily, when the trial court allegedly relies on improper sentencing considerations, the State must demonstrate that the trial court's sentencing decision was not so influenced. See N.D.W. v. State, 235 So. 3d 1001, 1002 (Fla. 2d DCA 2017) ("The burden is on the State to show that the trial court did not rely on the improper factor in imposing the sentence where it appears that the trial court may have done so." (first citing Fernandez, 212 So. 3d at 497; then citing Norvil, 191 So. 3d at 409)). We have reversed cases for resentencing where the sentence has been, "at least in part,"

- 6 -

influenced by improper sentencing considerations.  See, e.g., Love v. State, 235 So. 3d 1037, 1038 (Fla. 2d DCA 2018) (reversing for resentencing "because the State presented evidence of impermissible sentencing factors and [defendant's] sentence may have been based, at least in part, on those impermissible factors"); Nusspickel v. State, 966 So. 2d 441, 444–45 (Fla. 2d DCA 2007) ("If portions of the record reflect that the trial court may have relied upon impermissible considerations in imposing sentence, the State bears the burden to show from the record as a whole that the trial court did not rely on such impermissible considerations.").

However, we need not put this case through the rigors of such an examination.  To our way of thinking, a community control revocation proceeding is distinguishable from the scenario in Norvil, where, following the defendant's entry of an open guilty plea to armed burglary of a dwelling, he allegedly burglarized a vehicle.  Id. 191 So. 3d at 407.  In imposing sentence on the armed burglary offense, the trial court improperly considered the vehicle burglary.  Id. at 407–08.  But, as Mr. Turner must recognize, Norvil and all of the other cases upon which he relies involved the trial court's improper sentencing considerations following a trial or a guilty plea on the main offense; they did not implicate a controlee's conduct during a term of "intensive, supervised custody."  See § 948.001(2), Fla. Stat. (1998) (defining "community control" as "a form of intensive, supervised custody in the community, including surveillance on weekends and holidays").  "Despite the strict conditions imposed on the controlee, community control is not intended to be a punitive regime . . . . [C]ommunity control 'helps the subject to conform his or her conduct to society's requirements by discouraging behaviors that are likely to lead to new law violations or other violations of supervision.' "

- 7 -

Filmore v. State, 133 So. 3d 1188, 1194 (Fla. 2d DCA 2014) (quoting Correa v. State, 43 So. 3d 738, 745 (Fla. 2d DCA 2010)).

Community control is, indeed, "a harsh and more severe alternative to ordinary probation." State v. Mestas, 507 So. 2d 587, 588 (Fla. 1987). Trial courts have broad discretion to grant or revoke the privilege of community control. See Anthony v. State, 854 So. 2d 744, 747 (Fla. 2d DCA 2003). This discretion "is necessarily broad and extensive in order that the interests of society may be protected against a repeating offender or one who disregards the conditions stipulated for his . . . remaining at large." Lawson v. State, 969 So. 2d 222, 229 (Fla. 2007) (emphasis omitted) (quoting State ex rel. Roberts v. Cochran, 140 So. 2d 597, 599 (Fla. 1962)).

And yet, the power to revoke community control is not unrestrained; the trial court must afford due process. See id. at 229–30. "In addition to the factual determination of whether a violation of [community control] has occurred, a trial court's decision to revoke probation involves a discretionary determination of whether the violation justifies the revocation of [community control]." Amason v. State, 76 So. 3d 374, 377 (Fla. 2d DCA 2011) (citing Black v. Romano, 471 U.S. 606, 611 (1985)). "[T]he final revocation of probation must be preceded by a hearing" at which the controlee is afforded, among other entitlements, "an opportunity to be heard." Black, 471 U.S. at 611–12; see, e.g., Johnpier v. State, 89 So. 3d 996, 996 (Fla. 2d DCA 2012) (reversing probationer's sentence when "the trial court erred by refusing to hear any argument on sentencing"); Balsinger v. State, 974 So. 2d 592, 593 (Fla. 2d DCA 2008) ("If the probationer does not admit to the violation and the charged violation is not dismissed, the court must give the probationer an opportunity to be fully heard."). This

means that the controlee has the opportunity to demonstrate that he did not violate community control or, if he did, that circumstances do not warrant revocation. See Morrissey v. Brewer, 408 U.S. 471, 488 (1972) ("The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation."); Amason, 76 So. 3d at 377 ("A probationer must have an opportunity to present mitigating evidence and argue for sentencing alternatives when the court has sentencing discretion." (citing Black, 471 U.S. at 614).

A trial court's decision to revoke community control is informed properly by a complete understanding of the controlee's behavior while serving community control. In our view, the arrest stemming from a new law violation is incidental to the conduct precipitating the arrest. Thus, the trial court's consideration of such conduct, in the context of a community control violation hearing, is proper. Our conclusion is buttressed by the unique considerations and procedures attendant to community control revocation hearings. See Savage, 120 So. 3d at 621-23 (explaining that the trial court's decision and appellate court's standard of review of an order revoking probation involves two steps; first, "whether the finding of a willful and substantial violation is supported by competent substantial evidence"; and, second, whether the trial court's revocation decision constitutes an abuse of discretion).

I.      Violation

Due process requires that the State prove an alleged community control violation at a hearing or that the defendant enter a knowing admission before the trial court revokes the community control. Balsinger, 974 So. 2d at 593; see, e.g., Randall v.

State, 741 So. 2d 1183, 1184 (Fla. 2d DCA 1999) (reversing and remanding order revoking defendant's community control due to the constitutionally inadequate revocation hearing "with nothing in this record approaching a knowing waiver of hearing or a knowing admission to the alleged violations").

There is no dispute that Mr. Turner knowingly admitted to each of the violations alleged in the amended affidavit. Both parties agree that this admission constitutes competent substantial evidence that Mr. Turner willfully and substantially violated community control. The parties disagree, however, as to the constraints this admission had upon the trial court. As noted above, Mr. Turner asserts that his admission prohibited the trial court from receiving evidence as to facts underlying the violations. We disagree.

In fact, it would have been error for the trial court to hold such an abbreviated and truncated revocation hearing. "What is needed is an informal hearing structured to assure that the finding of a . . . violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the [controlee]'s behavior." Peters v. State, 984 So. 2d 1227, 1234 (Fla. 2008) (quoting Morrissey, 408 U.S. at 484).

## II.    Revocation

After Mr. Turner admitted to violating community control, the trial court had to consider whether to revoke, modify, or continue community control. See § 948.06(1). This decision is, itself, a separate process from the violation stage of the hearing. See Savage, 120 So. 3d at 621 ("Both the trial court's decision whether to revoke probation and our standard of review involve two steps."); Harrington v. State, 238 So. 3d 294,

- 10 -

299 (Fla. 4th DCA 2018); Estevez v. State, 705 So. 2d 972, 973 (Fla. 3d DCA 1998).

The trial court's decision to revoke community control necessarily contemplates that the decision will be fully informed. After all, "[d]ue process envisions a law that hears before it condemns, proceeds upon inquiry, and renders judgment only after proper consideration of issues advanced by adversarial parties." Scull v. State, 569 So. 2d 1251, 1252 (Fla. 1990).

The trial court's decision whether to revoke community control involves a discretionary determination as to whether the violation justifies revocation. See Russell v. State, 982 So. 2d 642, 646 (Fla. 2008) ("In determining whether probation should be revoked, the trial court enjoys broad discretion."). As we stated more than fifty years ago, "the purpose [of a probation violation hearing] is to determine if good behavior has been tainted by bad conduct. It is true that the probation conditions are often broad and can easily be broken but it is only by grace that freedom is enjoyed in the first place." Bowen v. State, 229 So. 2d 272, 274 (Fla. 2d DCA 1969) (quoting McNeely v. State, 186 So. 2d 520, 524 (Fla. 2d DCA 1966)). Consequently, the trial court must ask whether the controlee's behavior, while on community control, justifies revocation.

In this case, the trial court scheduled a second hearing where it would consider an appropriate course in light of Mr. Turner's admitted violations. The trial court afforded both parties the opportunity to present evidence and argument. The State introduced evidence of Mr. Turner's conduct. Mr. Turner presented mitigating evidence and argued for sentencing alternatives. See, e.g., Black, 471 U.S. at 614 ("[W]here the factfinder has discretion to continue probation, the procedures required by Gagnon[ v. Scarpelli, 411 U.S. 778 (1973)] and Morrissey[, 408 U.S. 471,] assure the

- 11 -

probationer an opportunity to present mitigating evidence and to argue that alternatives to imprisonment are appropriate."); cf. Caldwell v. State, 72 So. 3d 779, 779 (Fla. 2d DCA 2011) (reversing probation revocation order because "the trial court erred by failing to hear any argument on sentencing" (citing Estevez v. State, 705 So. 2d 972, 972 (Fla. 3d DCA 1998), for the proposition that "a probationer must have an opportunity to be heard regarding what sentence should be imposed and to present mitigating evidence and argue for sentencing alternatives when the trial court has sentencing discretion"); U.S. v. Holland, 850 F.2d 1048, 1051 (5th Cir. 1988) ("Even a probationer who admits the allegations against him must be given an opportunity to 'explain away the accusation,' and to offer mitigating evidence suggesting that the violation doesn't warrant revocation." (citations omitted) (quoting Hahn v. Burke, 430 F.2d 100, 104 (7th Cir. 1970)).

Despite the "intensive, supervised custody" to which Mr. Turner was subjected, he was unable to live at liberty without violating the law. The "[c]orollary to a defendant being placed on [community control] because it is more than likely that he will not repeat criminal conduct is the proposition that he is not entitled to remain at large if he persists in criminal tendencies . . . ." Bernhardt v. State, 288 So. 2d 490, 495 (Fla. 1974).

The trial court properly concluded that, based upon Mr. Turner's conduct, revocation of community control was appropriate.

III.    Sentencing

A trial court's consideration of improper factors in sentencing constitutes a denial of due process. Smith v. State, 62 So. 3d 698, 700 (Fla. 2d DCA 2011)

("Because the trial court expressly considered these improper factors in sentencing, Smith was denied due process and the trial court committed fundamental error."). Mr. Turner correctly contends that "a trial court may not consider a subsequent arrest without conviction during sentencing for the primary offense." See Norvil, 191 So. 3d at 407.

Be that as it may, sentencing and the attendant considerations at a revocation hearing are different. The Third District explained that "as in any adult sentencing hearing, it was improper for the [trial] judge to consider the details of the pending charges alleged to have occurred after the offenses for which Mirutil was to be sentenced." Mirutil v. State, 30 So. 3d 588, 590 (Fla. 3d DCA 2010) (citing Gray v. State, 964 So. 2d 884 (Fla. 2d DCA 2007)). However, the district court carefully distinguished between sentencing following a criminal defendant's initial conviction, and sentencing related to revocation. It observed that "[t]he sentencing hearing was not tantamount to a probation violation hearing, where the [trial] court may consider the new crimes a defendant committed because he violated his probation by doing so." Id. at 590 (emphasis added). As recounted above, the trial court did not improperly rely on the pending charges resulting from Mr. Turner's subsequent arrest, but, rather, on his conduct that violated his community control. After all, "[w]hen a greater sentence is imposed upon the revocation of probation, it can be based upon the defendant's subsequent conduct demonstrating his lack of amenability to reform." Williams v. Wainwright, 650 F.2d 58, 61 (5th Cir. 1981).

Finally, the sentencing scheme established by the Florida Legislature supports our decision. "The provision of criminal penalties and of limitations upon the

- 13 -

application of such penalties is a matter of predominantly substantive law and, as such, is a matter properly addressed by the Legislature." § 921.002(1); see also Woods v. State, 740 So. 2d 20, 23 (Fla. 1st DCA 1999) ("In Florida, the plenary power to prescribe the punishment for criminal offenses lies with the legislature . . . .").

Under the sentencing law applicable when Mr. Turner committed the primary offense of murder, see Fla. R. Crim. P. 3.704(d)(30) ("Sentences imposed after revocation of . . . community control must be imposed according to the sentencing law applicable at the time of the commission of the original offense."), the trial court had to use the sentencing scoresheet associated with the 1998 CPC when sentencing him for his violation of community control.

The 1998 version of section 921.0024(1)(b) directs that the assessment of "[c]ommunity sanction violation points [be] assessed when a community sanction violation is before the court for sentencing." See also § 921.0021(6)(b) (enumerating community control as a "community sanction"). Specifically, the statute provides for consideration of not only violations with felony convictions, but also those pending before the court:

> Six (6) sentence points are assessed for each community sanction violation, and each successive community sanction violation; however, if the community sanction violation includes a new felony conviction before the sentencing court, twelve (12) community sanction violation points are assessed for such violation, and for each successive community sanction violation involving a new felony conviction.

§ 921.0024(1)(b). Consequently, a scoresheet prepared for sentencing upon revocation necessarily differs from the scoresheet prepared at Mr. Turner's original sentencing, as the revocation scoresheet was required to include community sanction violation points.

- 14 -

See Sanders v. State, 35 So. 3d 864, 869 (Fla. 2010) ("As a result of these community sanction violation points, the scoresheet prepared for a sentencing upon revocation of probation necessarily will differ from the scoresheet prepared for the original sentencing. Recalculation is not only permitted but required by section 921.0024."). Because the scoresheet's inclusion of Mr. Turner's community sanction points was mandated by statute, it was necessarily proper for the trial court to consider Mr. Turner's new law violations.

### Scrivener's error

The revocation order incorrectly reflects that Mr. Turner violated all of the conditions in the original community control violation affidavit. The sentencing hearing transcript demonstrates that the trial court found Mr. Turner in violation of each of the allegations in the amended violation affidavit. Thus, remand is necessary for correction of the revocation order. See McNeil v. State, 908 So. 2d 556, 557-58 (Fla. 2d DCA 2005) (remanding for correction of probation revocation order to conform to the trial court's oral pronouncement of the conditions violated).

### Conclusion

For the reasons explained above, we affirm the revocation of Mr. Turner's community control and his resulting sentence. However, we remand for correction of the scrivener's error on the revocation order.

Affirmed; remanded for entry of a corrected order of revocation of community control.

KELLY and SALARIO, JJ., Concur.