DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHARLES W. RANDOLPH, JR.,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D21-3052

[January 25, 2023]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Lawrence Michael Mirman, Judge; L.T. Case No. 56-2018-CF-003027-A.

Carey Haughwout, Public Defender, and Robert Porter, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Paul Patti, III, Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

Charles W. Randolph, Jr. ("Defendant") appeals the order revoking his probation and the judgment and sentence imposed after he admitted violating one condition of probation and waived a hearing on additional alleged new law violations. Defendant argues the trial court improperly considered evidence of the new crimes in revoking probation and imposing sentence. After determining that the bright-line rule announced in *Norvil v. State*, 191 So. 3d 406 (Fla. 2016), does not apply to violation of probation ("VOP") proceedings, and the errors alleged by Defendant were invited, we affirm the trial court.

*Background*

In 2018, Defendant entered a negotiated plea of no contest to one firearm offense and nine drug-related offenses. He was sentenced to prison, followed by probation. Soon after his release from prison, a VOP affidavit was filed, alleging Defendant violated condition 2 of the probation order by failing to pay cost of supervision; condition 5 by failing to live

without violating any law; condition 7 by unlawfully possessing drugs; and condition 10 by failing to pay court costs. Regarding condition 5, Defendant was alleged to have committed eleven new crimes. Defendant was arrested for VOP while in jail after his arrest on the new crimes.

At the time of his VOP hearing, Defendant was represented by two attorneys: one for the VOP, and another for the new crimes. The state made a plea offer that would resolve the VOP case and all the new crimes. Defendant rejected the offer, but rather than proceed with a VOP trial, Defendant entered an open plea admitting he violated condition 2 (failure to pay cost of supervision) only. After the state alerted the trial court that it wanted to "address the issue of [Defendant] admitting only as it relates to the condition 2," the state and VOP counsel discussed how they would proceed in light of Defendant admitting only a violation of condition 2:

> **State:** I think [Defendant] can ... argue to the Court why he wasn't in violation of all of those [other alleged violations]. ... *I am still going to be presenting evidence and argument related to all of the other violations.* ...
>
> ....
>
> **VOP counsel:** I understand ... [H]e's pleaing [sic] to the condition 2.
>
> **Court:** Mm hmm. (Phonetic.)
>
> **VOP counsel:** Not to the new crime related issues because [Defendant is] contesting them. I'm only gonna address condition 2. *The State if they wanna describe and* (indiscernible) *entwine facts I don't think I can stop [that].*
>
> **Court:** Mm hmm. (Phonetic.)
>
> **VOP counsel:** Uh, but as long as, Your Honor, makes a ruling, and (indiscernible) in violation of condition 2 and not the additional ... *it'll be a legal proceeding.*
>
> **State:** I think we're gonna be having a VOP hearing ...
>
> **Court:** Right. I think so. I think the State turns out to be right there. ... [Defendant] doesn't wanna go forward with a hearing cause he's admitting that the State can prove by the greater weight of the evidence condition 2. It's sort of like a

2

no contest plea, *but for sentencing purposes the State could still rely on everything else in the affidavit … for argument purposes in that regard.* I mean a violation is a violation. … *[S]o he can't limit you by his plea to … arguments for sentencing.* I think that's the situation.

**VOP counsel:** *Yes Judge.*

….

**Court:** … [Defendant] doesn't [want to] have the hearing cause he realizes he's gonna lose the hearing as far as condition 2, but he's not conceding that he violated the other ones, but that won't preclude the State from being able to say, you know, these are already also alleged, and the Court can rely on … [these] because he can't limit … [the State] in that regard.

**VOP counsel:** Yeah, I explained to him, Judge that … even if these charges were dismissed he could still be held accountable for them on violation of probation. … *[I]t's strategically better for him not to resolve all the cases at once cause the score's lower.* So, he's just gonna belly up on condition 2 ….

(emphasis added).

The parties then discussed the calculation of Defendant's scoresheet for only the VOP. After conferring with VOP counsel off record regarding the possible sentences with the VOP and his new charges, on the record Defendant confirmed he wanted to proceed with his original plan to reject the State's offer to resolve all of the VOPs and new charges together and proceed with a plea only as to condition 2. The trial court acknowledged Defendant's decision and proceeded only with the VOP as to condition 2. The trial court again addressed Defendant as to how the case would proceed:

**Court:** Okay. So, you're entering an open plea admitting to the violation. I realize you're admitting one condition, but as I mentioned before … if you violated, you violated, and then the only issue is what's the appropriate sentence. I'll determine that. Nobody knows, especially me, what I'm gonna do. … [A]nd the parameters, the limitations for me, are the ScoreSheet parameters which are legal sentence absent a

3

departure would be 21.05 months to 50 years. Do you understand that?

**Defendant:** Yes sir.

**Court:** Okay. So, the only rights you're giving up are the right to a hearing, and *you're giving up that right to hearing as to the violation* because you and your lawyer discussed at a minimum as condition 2 you're not contesting that the State could prove that so let's proceed to sentencing and discuss what an appropriate sentence is. You understand that?

**Defendant:** *Yes sir.*

(emphasis added).

After accepting the VOP admission as to condition 2, the trial court proceeded to sentencing. The state introduced physical evidence and testimony of a detective who participated in executing two recorded controlled buys for drugs and a firearm between a confidential informant and Defendant. The state also presented evidence that Defendant possessed firearms. Additionally, the state presented evidence of the search of the residence where the controlled buys occurred and of Defendant's arrest for the controlled buys.

VOP counsel cross-examined the detective, focusing on the fact that Defendant was not present during the search of the residence and the drugs in the residence were not on Defendant's person. When the trial court offered VOP counsel the opportunity to present evidence, VOP counsel declined.

The evidence presented for sentencing addressed only the controlled purchases, possession of a firearm, the search of the residence, and Defendant's arrest. Nothing was presented regarding violation of conditions 2 or 10. VOP counsel raised no objection to the evidence presented by the state or to the course of the proceedings.

After sentencing, Defendant gave notice of appeal.

*Appellate Analysis*

Defendant claims the trial court fundamentally erred in denying him due process during his VOP hearing and sentencing in two respects. First, Defendant argues that the trial court denied him due process in failing to

hold a violation hearing on the unadmitted alleged VOPs, as required under the applicable statute, and, instead, the trial court accepted his admission as to violation of one condition and proceeded to sentencing without addressing the other alleged violations. Second, Defendant argues that the trial court denied him due process by considering evidence of the unadmitted alleged violations during the sentencing hearing, asserting such evidence was an impermissible sentencing factor. Because the challenges were not preserved below, Defendant claims fundamental error and seeks a new violation hearing before a different judge.

In terms of entitlement to a new VOP hearing, fundamental error is one that "reach[es] down into the validity of the trial itself to the extent that a [finding of guilt] could not have been obtained without the assistance of the alleged error." *Milanes v. State*, 296 So. 3d 933, 937 (Fla. 4th DCA 2020) (quoting *Harrell v. State*, 894 So. 2d 935, 941 (Fla. 2005)). We have noted that "[t]he doctrine of fundamental error must be exercised cautiously and rarely." *Id.*

Our supreme court has explained what may constitute fundamental error in sentencing as follows:

> [I]n order to be considered fundamental, an error must be serious. In determining the seriousness of an error, the inquiry must focus on the nature of the error, its qualitative effect on the sentencing process and its quantitative effect on the sentence. *See* [*Bain v. State*, 730 So. 2d 296, 304–05 (Fla. 2d DCA 1999)]. In most cases, a fundamental sentencing error will be one that affects the determination of the length of the sentence such that the interests of justice will not be served if the error remains uncorrected.
>
> . . . .
>
> > Thus, an error that improperly extends the defendant's incarceration or supervision likely would impress us as fundamental.

*Maddox v. State*, 760 So. 2d 89, 99–100 (Fla. 2000) (quoting *Bain*, 730 So. 2d at 305). Further, "[a] trial court's consideration of improper factors in sentencing constitutes a denial of due process," which amounts to fundamental error. *Turner v. State*, 261 So. 3d 729, 737–38 (Fla. 2d DCA 2018); *see also Hillary v. State*, 232 So. 3d 3, 4 (Fla. 4th DCA 2017).

5

We review de novo whether a trial court provided due process. *Hill v. State*, 246 So. 3d 392, 394 (Fla. 4th DCA 2018). We also review de novo whether a trial court relied on impermissible factors in sentencing in violation of a defendant's due process rights. *Charles v. State*, 204 So. 3d 63, 66 (Fla. 4th DCA 2016).

Addressing an alleged VOP is a two-step process in which the trial court first determines whether, by a preponderance of the evidence, the defendant willfully and substantially violated a condition of probation (the violation phase) and then, second, whether probation should be revoked (the sentencing phase). *Milanes*, 296 So. 3d at 937. To satisfy due process, a defendant must be provided an opportunity to be heard on two issues: "(1) whether defendant has violated a condition of probation, and (2) what sentence should be imposed. This hearing may be informal in nature, but there must be a reasonable opportunity to be heard." *Harrington v. State*, 238 So. 3d 294, 299 (Fla. 4th DCA 2018).

Unadmitted VOP Allegations

Defendant contends that the trial court denied him due process in failing to hold a violation hearing on the other alleged VOPs which he did not admit. The state responds that the issue of whether Defendant committed a VOP was settled by his admission to one of the allegations and the issue is not properly before this court. Additionally, the state maintains that this appeal would not entitle Defendant to a new violation hearing because his admission to condition 2 remains unchallenged and was not withdrawn.

Section 948.06(2), Florida Statutes (2021), which guides VOP proceedings, provides in part:

> (d) If such charge is not at that time admitted by the probationer or offender and if it is not dismissed, the court, as soon as may be practicable, shall give the probationer or offender an opportunity to be fully heard on his or her behalf in person or by counsel.

> (e) After such hearing, the court may revoke, modify, or continue the probation or community control or place the probationer into community control. If such probation or community control is revoked, the court shall adjudge the probationer or offender guilty of the offense charged and proven or admitted, unless he or she has previously been adjudged guilty, and impose any sentence which it might have

6

originally imposed before placing the probationer or offender on probation or into community control.

§ 948.06(2)(d)–(e), Fla. Stat. (2021).

Finding a VOP requires the state to prove a defendant willfully and substantially violated the terms of his or her probation by a preponderance of the evidence. *Mata v. State*, 31 So. 3d 257, 259 (Fla. 4th DCA 2010). "A trial court is authorized to revoke probation based on a single violation of probation alone." *McDoughall v. State*, 133 So. 3d 1097, 1100 (Fla. 4th DCA 2014) (quoting *Whitehead v. State*, 22 So. 3d 846, 847-48 (Fla. 4th DCA 2009)). Where an affidavit of VOP alleges multiple violations, the state is not required to proceed on every allegation of VOP presented in the affidavit, as the state may abandon some allegations. *See, e.g.*, *D.M.B. v. State*, 254 So. 3d 448, 450 (Fla. 4th DCA 2018) ("During the final probation violation hearing, . . . the state abandoned all other allegations of probation violation and proceeded only on the loitering or prowling charge."); *Jones v. State*, 117 So. 3d 818, 820 (Fla. 4th DCA 2013) ("At the violation hearing, the State abandoned all allegations of violation except for k.4."). The state is also not required to prove every VOP allegation in an affidavit to support revocation, as a revocation of probation can be affirmed even where there is insufficient evidence of a trial court's findings as to VOP for some allegations, when "it is clear from the record that the trial court would have revoked probation and imposed the same sentence based solely upon the remaining [allegations.]" *Mata*, 31 So. 3d at 260.

The issue as presented by Defendant invites the question of what happens to the remaining unadmitted allegations of VOP when no attempt was made to prove them at a violation hearing and those violations were not admitted, dismissed, or reserved to be addressed at a later time. While we have not found an answer to this unique question, we determine any error regarding the unresolved allegations was invited by Defendant. *See Czubak v. State*, 570 So. 2d 925, 928 (Fla. 1990) ("Under the invited-error doctrine, a party may not make or invite error at trial and then take advantage of the error on appeal.").

Defendant knowingly and strategically desired not to have a violation hearing on the new crime allegations. From the outset of the hearing, the state made it clear that it was going to address additional allegations in the VOP affidavit other than the specific technical violation which Defendant was admitting. VOP counsel did not contest the state's announced course of action and specifically told the trial court that "as long as, Your Honor, makes a ruling, and (indiscernible) in violation of condition 2 and not the additional … it'll be a legal proceeding."

Later in the hearing, in summarizing the situation at the plea phase, the trial court recognized Defendant's desire not to concede the unadmitted allegations and twice explained that, although Defendant did not want to proceed with a hearing to prove the other allegations, the plea to one technical violation did not preclude the state from relying on the remaining allegations in the affidavit for sentencing. Both times, VOP counsel responded affirmatively and agreed with the trial court.

Then, when discussing Defendant's rejection of the state's offer to resolve both the VOPs and the new crime charges, VOP counsel stated: "[I]t's strategically better for him not to resolve all the cases at once cause the score's lower. So, he's just gonna belly up on condition 2 ...." Before proceeding to sentencing, the trial court again explained that Defendant was "giving up that right to hearing as to the violation because you and your lawyer discussed at a minimum as condition 2 you're not contesting that the State could prove that," to which Defendant affirmatively responded he understood.

Defendant's strategy was made further clear in VOP counsel's closing arguments when counsel said: "Judge, my client's taking responsibility for condition 2 in this case. ... [W]ithout going too far field [sic] into the other allegations, Judge, I think there are some ... viable defense issues that I'm not responsible for ...."

Based on the above, we are satisfied that Defendant strategically wanted to admit only a technical violation and not have a violation hearing to address the new crime violations. Waiver of the right to a violation hearing was explained to Defendant and he stated he understood. As such, Defendant knowingly declined a further violation hearing. Due process was satisfied because Defendant was given a full and fair opportunity to be heard on the VOP allegations against him before sentencing, even though he waived that right. *See Harrington,* 238 So. 3d at 299. Therefore, where Defendant strategically proceeded on only one technical violation and acknowledged both that he was waiving a hearing and that the State would proceed with evidence regarding the unadmitted allegations in the sentencing phase, any error in not having a violation hearing on the unadmitted allegations was invited error. Thus, we affirm the trial court on this issue.

Sentencing Phase

"[W]here the court has sentencing discretion, [a] probationer must have an opportunity to present mitigating evidence and argue for sentencing

alternatives." *Id.* at 299 (summarizing a holding of *Black v. Romano*, 471 U.S. 606, 614, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985)). "A sentence within the statutory limits is generally not subject to appellate review. An exception to this rule exists when a sentencing court considers constitutionally impermissible sentencing factors." *Bevans v. State*, 291 So. 3d 591, 593 (Fla. 4th DCA 2020) (citation omitted). "Ordinarily, when the trial court allegedly relies on improper sentencing considerations, the State must demonstrate that the trial court's sentencing decision was not so influenced." *Turner*, 261 So. 3d at 734.

Impermissible sentencing factors include "'unsubstantiated allegations of misconduct' and 'unsupported speculations.'" *Mirutil v. State*, 30 So. 3d 588, 590 (Fla. 3d DCA 2010) (quoting *Reese v. State*, 639 So. 2d 1067, 1068 (Fla. 4th DCA 1994)). Defendant's argument that the trial court erred in imposing the VOP sentence in this case relies heavily on the bright-line rule announced by our supreme court in *Norvil*: "[A] trial court may not consider a subsequent arrest without conviction during sentencing for the primary offense." 191 So. 3d at 410. As discussed below, the bright-line rule applies to the initial sentencing on a charge and not to VOP proceedings.

Defendant relies on *Norvil*'s bright-line rule to equate consideration of subsequent arrests without conviction during VOP sentencing with the improper consideration of such arrests in the context of sentencing on a new law violation for which a defendant is placed on probation. Defendant also supports the argument by citing our decision in *Garcia v. State*, 279 So. 3d 148 (Fla. 4th DCA 2019). In *Garcia*, we applied *Norvil*'s principles and found fundamental error based on a due process violation where the trial court considered the defendant's uncharged misconduct while out on bond at sentencing. *Id.* at 149–51. However, recently, our supreme court quashed our decision in *State v. Garcia*, 346 So. 3d 581 (Fla. 2022), holding no fundamental error occurred in the trial court sentencing the defendant at the lower end of the sentencing range where the "sentencing judge gave no indication of having given weight to any arrest or charge supported merely by probable cause" and, in addition to the challenged impermissible evidence, the trial court heard evidence of the defendant's prior convictions and dangerous actions surrounding the primary offense. *Id.* at 586–87.

We continue to agree with the distinction made by the Second District in *Turner* between *Norvil's* bright-line rule for impermissible sentencing factors regarding sentencing for new law violations and what is permissible for consideration in the context of sentencing for VOPs. 261 So. 3d at 738.

9

In *Turner*, the defendant admitted to each of the alleged VOPs, which included several technical violations and several new law violations. *Id.* at 732–33. The defendant's criminal charges on the new law violations were still pending at the time of his VOP sentencing. *Id.* at 734. At his VOP sentencing hearing, the trial court heard several witnesses' testimony about the aggravated nature of the new law violations. *Id.* at 733. The trial court noted its revocation of community control and sentencing the defendant to life in prison was based on several factors, including "everything I've heard today." *Id.*

On appeal, the defendant argued that "because he admitted to the [new law] violations, there was no evidentiary hearing held to prove the new law violations by the greater weight of the evidence" and that "he did not admit guilt as to any of the new pending charges; rather, he only admitted a new law violation as he was only arrested for those charges." *Id.* at 734 (internal quotations omitted). In rejecting the defendant's argument, the Second District reasoned:

> *A trial court's decision to revoke community control is informed properly by a complete understanding of the controlee's behavior while serving community control.* In our view, the arrest stemming from a new law violation is incidental to the conduct precipitating the arrest. Thus, *the trial court's consideration of such conduct, in the context of a community control violation hearing, is proper.* Our conclusion is buttressed by the unique considerations and procedures attendant to community control revocation hearings.

> . . . .

> *After [the defendant] admitted to violating community control, the trial court had to consider whether to revoke, modify, or continue community control. See § 948.06(1)[, Fla. Stat].* This decision is, itself, a separate process from the violation stage of the hearing. The trial court's decision to revoke community control necessarily contemplates that the decision will be fully informed. After all, "[d]ue process envisions a law that hears before it condemns, proceeds upon inquiry, and renders judgment only after proper consideration of issues advanced by adversarial parties." *Scull v. State*, 569 So. 2d 1251, 1252 (Fla. 1990).

> *The trial court's decision whether to revoke community control involves a discretionary determination as to whether the*

*violation justifies revocation. As we stated more than fifty years ago, "the purpose [of a probation violation hearing] is to determine if good behavior has been tainted by bad conduct. It is true that the probation conditions are often broad and can easily be broken but it is only by grace that freedom is enjoyed in the first place."* Bowen v. State, 229 So. 2d 272, 274 (Fla. 2d DCA 1969) (quoting *McNeely v. State*, 186 So. 2d 520, 524 (Fla. 2d DCA 1966)). *Consequently, the trial court must ask whether the controlee's behavior, while on community control, justifies revocation.*

. . . .

[Defendant] correctly contends that "a trial court may not consider a subsequent arrest without conviction during sentencing for the primary offense." *See Norvil*, 191 So. 3d at 407.

Be that as it may, *sentencing and the attendant considerations at a revocation hearing are different.* . . . [T]he trial court did not improperly rely on the pending charges resulting from [the defendant's] subsequent arrest, but, rather, on his conduct that violated his community control. *After all, "[w]hen a greater sentence is imposed upon the revocation of probation, it can be based upon the defendant's subsequent conduct demonstrating his lack of amenability to reform."* Williams v. Wainwright, 650 F.2d 58, 61 (5th Cir. 1981).

*Id.* at 735–38 (third, fourth, and seventh alterations in original) (emphasis added) (citations omitted).

In determining whether to revoke probation, we agree with the Second District that the trial court's focus is on the grace which has been extended to the offender to show amenability to reform while on probation and whether "good behavior has been tainted by bad conduct." *Id.* at 737 (*Bowen*, 229 So. 2d at 274). As noted in *Turner*, "[a] trial court's decision to revoke community control is informed properly by a complete understanding of the controlee's behavior while serving community control" and "it can be based upon the defendant's subsequent conduct demonstrating his lack of amenability to reform." *Id.* at 736, 738 (quoting *Williams*, 650 F.2d at 61); *see also Bevans*, 291 So. 3d at 593.

11

With the present case, in addition to admission of a technical violation, the state's evidence at the sentencing hearing revealed Defendant's conduct during probation to be without regard for the grace given to him as a probationer. The state presented evidence that he became involved in the sale of drugs, possessed a firearm, and fled from officers in a dangerous manner. If the state was limited to evidence just on the technical violation, then the trial court would have an incomplete picture of whether Defendant was amendable to reform.

We previously have cited *Turner* with approval in *Bevans*. In *Bevans*, after the state proved new law violations, at sentencing, the trial court noted that it considered the fact that the defendant had been on probation less than seven days before having committed new law violations. 291 So. 3d at 592–93. On appeal, the defendant argued that the trial court impermissibly considered the short time period in which he committed new crimes after being placed on probation. *Id.* at 593. We affirmed, stating "the trial court properly considered that the violations of probation occurred so quickly after the imposition of probation, demonstrating appellant's inability to abide by the law for even a short period of time." *Id.* To support our conclusion, we cited *Turner* for the propositions that "the trial court may consider the new crimes a defendant committed because he violated his probation by doing so" and that, "[w]hen a greater sentence is imposed upon the revocation of probation, it can be based upon the defendant's subsequent conduct demonstrating his lack of amenability to reform." *Id.* (quoting *Turner*, 261 So. 3d at 738).

We acknowledge that in *Turner*, the defendant admitted to the new law violations. 261 So. 3d at 733. Additionally, in *Turner*, the applicable sentencing law allowed consideration of new community sanction violations to prepare the scoresheet, making it proper for the court to consider the new law violations for that reason alone. *Id.* at 738–39. While *Turner* is factually distinguishable on some points, the rationale as to *Norvil*'s inapplicability to VOP sentencing and the primary emphasis on ensuring the sentencing court has a complete understanding of a defendant's behavior relating to amenability to reform in order to decide whether to revoke probation remain applicable to a determination of the issues in the present case and support affirmance. *Id.* at 735–38.

Thus, we hold that the trial court properly considered evidence of Defendant's conduct during probation, including facts and conduct not directly related to the actual admitted violation, to have a complete picture of Defendant's amenability to reform in determining whether to revoke probation and impose a further sentence for the crimes for which Defendant was placed on probation. The state did not have to prove

additional new law violations to support revocation of Defendant's probation because Defendant freely and voluntarily admitted to violating condition 2. The state's purpose in presenting evidence of the new law violations was to establish Defendant's conduct while on probation showing lack of amenability to reform.

Additionally, we affirm because Defendant invited error. Defendant was fully aware that evidence of the new law violations would be utilized by the state at sentencing. When the state expressly stated it would be presenting such evidence, defense counsel did not object, and even agreed it would be a "legal proceeding." Defendant had a full and fair opportunity to respond with his own evidence regarding the alleged new crimes, but he chose only to cross-examine the detective, which focused on execution of the search warrant of the residence. Defendant did not offer any evidence to counter the detective's testimony or the other evidence presented. Allowing Defendant's position to stand—that he can admit to only a single technical violation and then not allow the state to present evidence of any other VOP allegation to give the trial court a complete picture of the defendant's conduct on probation through evidence (i.e., substantiated facts)—would undermine the well-settled law that one violation, even a single technical violation, is sufficient to revoke probation and sentence anywhere in the guidelines. *See* § 948.06(2), Fla. Stat. (2021); *McDoughall*, 133 So. 3d at 1100.[1]

*Conclusion*

Having determined the trial court committed no error, including fundamental error, we affirm the revocation of Defendant's probation and the sentence imposed thereafter.

*Affirmed.*

GROSS and LEVINE, JJ., concur.

\*       \*       \*

**Not final until disposition of timely filed motion for rehearing.**

---

[1] We also apply the reasoning of our supreme court in *Garcia*, that consideration of new law violations cannot be considered fundamental error where "[t]he sentencing judge gave no indication of having given weight to any arrest or charge supported merely by probable cause." 346 So. 3d at 586.