DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RASHAD MILANES,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-2435

[June 3, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Thomas J. Coleman, Judge; L.T. Case No. 09008984CF10A.

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jessenia J. Concepcion, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Rashad Milanes appeals the revocation of his probation and imposition of concurrent fifteen-year prison sentences. He contends that the court committed fundamental error by relying on impermissible considerations in finding that he willfully violated probation and imposing sentence, without providing him an opportunity to be heard. We agree and reverse.

Appellant Milanes was placed on probation for one count of sexual battery by a person in familial authority and one count for lewd and lascivious molestation of a victim over the age of twelve. He was sentenced to five years in prison followed by ten years of sexual offender probation.

Upon his release from prison in 2013, Milanes commenced his probationary period. More than a year later in 2014, a Violation of Probation was filed alleging that he possessed marijuana and failed to take an annual polygraph test. Milanes admitted the violations and entered into a plea wherein he served 270 days in the county jail and was reinstated on probation with modified terms. In March of 2015, a

probation officer filed a Technical Violation Notification stating that Milanes failed to take a polygraph test within thirty days of his release from jail.  However, neither a violation of probation affidavit nor an arrest warrant was issued.

An affidavit was filed in June 2015 alleging that Milanes violated his probation by having unapproved communications with a child under the age of eighteen.  The trial court held a hearing, found him not guilty of the violation, and reinstated probation.

Three years later, in April 2018, his probation officer filed an affidavit accusing him of failure to register on the internet as a sexual offender and related charges.  He admitted the violations and was reinstated on probation with a special condition that he serve 180 days in the county jail.

The current appeal arises out of an Affidavit of Violation of Probation filed in March 2019, alleging that he had failed to remain in his residence between 10:00 p.m. and 6:00 a.m., in other words, alleging that he missed his curfew.  The affidavit described the violation:

> Circumstances:  On February 17, 2019, the offender during his curfew hours (10pm until 12:10 am) wasn't at his approved residence located at the 2700 block of N. Federal Highway according to G.P.S tracking.  The offender was at the Sawgrass Lanes (Bowling Alley) . . . G.P.S. on call Probation Officer [] called the offender at approximately 10:05 pm and instructed him to immediately return to his approved residence.  The offender failed to return back to his approved residence for two (2) hours until 12:10 am.

The accompanying report from the probation officer lists the prior incidents, and added that a technical violation notification was submitted by his probation officer in 2013 for the failure to abide by the mandatory curfew, but the court at the time declined to issue a warrant for the offender's arrest.  There is no other reference in the record and attached progress docket to this technical violation notification.

Milanes denied that he committed a willful and substantial violation by missing his curfew.  The trial court then conducted a final Violation of Probation hearing.  The probation officer testified that he had instructed Milanes on his curfew and gave him a G.P.S. monitor.  On the night in question, the monitor showed him at the Sawgrass Lane Bowling Alley at 10:00 p.m.  Milanes did not return to his house until 12:10 a.m.  The

2

officer did not receive any voicemails or messages that evening from Milanes explaining why he missed curfew, noting that he could have left a message even though the probation office was closed. An on-call probation officer testified that she receives the alerts when a G.P.S. monitor alarm occurs outside of normal business hours. On the date in question, she received an alert at 10 p.m. that Milanes was at the Sawgrass bowling alley. She spoke with Milanes who told her he was waiting for an Uber driver to pick him up. His speech was slurred. The G.P.S. monitor showed he arrived at his home at 12:10 a.m.

Milanes testified that he had gone to the bowling alley with a friend around 7:00 p.m. to celebrate his new job, which he would start the next day. He had no money and did not have his phone with him. His friend bought him three beers and two rounds of pool. Before 9:30 p.m. he used his friend's phone and called, Jasmine, the mother of his son, for a ride home. She lived about five minutes from the bowling alley and would routinely provide a ride for him. However, Jasmine called back and told him she couldn't find her keys. He was not able to call his probation officer, because the officer's phone number was not in his G.P.S. device. He then asked his friend if she could drive him to his house, but she thought she was too intoxicated to drive. He didn't have money or a cell phone to call a taxi or Uber.

Milanes said he waited forty minutes to an hour for the friend to sober up, but he became concerned about getting in an accident, so he declined the ride and walked to Jasmine's house to help her look for her keys which they did not find. Then he tried calling family members to help. His mother, who lives in Georgia, finally called back a half an hour later and agreed to call him an Uber. He did not recall how long it took, but eventually the Uber arrived and took him home.

The next morning Milanes called his probation officer and told him why he missed his curfew. The officer explained to him that he would have to violate him because of the lengthy delay in getting home.

After the presentation of this evidence, both the State and the defense gave closing arguments to the court. The court immediately determined that Milanes had willfully and substantially violated his probation by the curfew violation. It explained that two factors influenced its decision. The first was Milanes's probation history. It pointed to a May 2013 curfew violation, which the court described as "a pass" because the judge had not violated him. The court then noted a second violation in May of 2015, which was "warning number two about curfew." The court pointed to a third curfew violation in June 2015. Based upon this history, the trial

court found that Milanes was "resistant to supervision" and did not understand that curfew was a "hard line."

At this point, it should be noted that none of what the court treated as facts regarding Milanes's probation violation history is confirmed by any testimony or documents in our record. There is only the reference to a May 2013 curfew technical violation, but there is nothing in this record, other than the note in the 2019 report to confirm this, or in the progress docket which is also part of this record. Nothing in the record supports the other two curfew violations found by the trial court. Their dates match two 2015 affidavits of violation, but they had nothing to do with curfew violations. Thus, the court appears to be completely mistaken about the evidence, even if the court could have taken notice of it without allowing Milanes's counsel a chance to inspect or question it.

The court also found that Milanes should not have gone out drinking and put himself in a position over which he had no control. Believing that Milanes could have called his mother earlier to get an Uber ride home, the court found that it was his lack of action which caused his probation violation. The court concluded that considering Milanes's "prior history of not being able to conform to the conditions of probation . . . . he knowingly, willfully and substantially violated the terms and conditions of his probation." Without giving Milanes any opportunity to address the court on his sentence, the court immediately sentenced him to concurrent fifteen years terms in prison for each count of the original charges. Milanes appeals.

Milanes contends on appeal that the trial court violated his right to due process by considering his prior probation history in both the violation hearing and in imposing the sentence. The court ruled without affording Milanes the opportunity to respond and without providing him, as was his right, a hearing focused on the appropriate sentence. While no objection was lodged, because the court ruled before one could be made, we conclude that the court committed fundamental error.

The doctrine of fundamental error must be exercised cautiously and rarely. In *Ray v. State*, 403 So. 2d 956, 960 (Fla. 1981), the court set the criteria for permitting errors to be raised on appeal when they had not been properly preserved in the proceedings in the trial court:

> [F]or error to be so fundamental that it may be urged on appeal, though not properly presented below, the error must amount to a denial of due process. . . .

4

Fundamental error has been defined as "error which goes to the foundation of the case or goes to the merits of the cause of action." *Sanford v. Rubin*, 237 So. 2d 134, 137 (Fla.1970). The appellate courts, however, have been cautioned to exercise their discretion concerning fundamental error "very guardedly." *Id.* We agree with Judge Hubbart's observation that the doctrine of fundamental error should be applied only in the rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application. *Porter v. State*, 356 So. 2d 1268 (Fla. 3d DCA) (Hubbart, J., dissenting), remanded, 364 So. 2d 892 (Fla.1978), rev'd. on remand, 367 So. 2d 705 (Fla. 3d DCA 1979).

The supreme court has also described fundamental error as one which must "reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Harrell v. State*, 894 So. 2d 935, 941 (Fla. 2005) (quoting *Brown v. State*, 124 So. 2d 481, 484 (Fla.1960)).

This appeal is one of those rare cases requiring the application of fundamental error. Milanes was denied due process when the trial court relied on unsubstantiated prior misconduct to conclude that Milanes's violation of probation was willful, and in determining to revoke probation and impose a sentence for the violation. It further erred by failing to allow a sentencing hearing to determine the appropriate punishment.

Whether to revoke probation involves a two-step process. *See Savage v. State*, 120 So. 3d 619, 621-23 (Fla. 2d DCA 2013). First, the trial court must find by a preponderance of the evidence that the probationer willfully and substantially violated probation. Second, the court must then determine whether to revoke probation. *Id.* The appellate court reviews the first step for competent substantial evidence to support the revocation and for an abuse of discretion as to the second step. *Id. See also Harrington v. State*, 238 So. 3d 294, 298 (Fla. 4th DCA 2018).

After the presentation of evidence and argument of counsel, the trial court reviewed Milanes's prior probation record and significantly relied on what the court apparently believed were prior violations of curfew offenses to determine that the present violation of curfew was willful and substantial. The defense had no opportunity to defend against these charges. In fact, the trial court's factual recitations appear to be completely unsubstantiated or wrong.

The first violation mentioned by the court is not reflected in the record, except by a note made by the current probation officer that a prior probation officer had filed a technical violation of curfew. Milanes was never found to have violated curfew at that time, as no Affidavit of Violation was even filed, nor is there a notification letter of a technical violation in the record. *See* § 948.06(1)(h), Fla. Stat. (2019). It is a matter of sheer conjecture as to the extent of the violation or what the court at the time thought of it.

The trial court stated that a second curfew violation occurred in March 2015, but there is no evidence of any curfew violation. While Milanes did admit to a technical violation of probation at that time, it was for failure to take a polygraph test within thirty days of release from jail, not a curfew violation. And the third curfew violation attributed to Milanes by the trial court is also a mistake. Milanes was in fact charged with a violation in June 2015, but it involved unapproved communications with the victim, not a curfew violation. Moreover, Milanes was found not guilty of the violation.

In sum, the trial court misconstrued the record and relied on false evidence to conclude that Milanes was a repeat curfew violator, which led the court to conclude that the current violation of curfew was willful and substantial, despite Milanes's explanation of how it occurred:

> So when you look at the situation he put himself in *and you factor that in with the prior history of not being able to conform to the conditions of probation and being aware that curfew violations could and did -- at one point he got a pass and another point was in violation.* This court finds that he knowingly, willfully and substantially violated the terms and conditions of his probation.

(Emphasis added.) We conclude that it violates due process for a trial court to rely on unsubstantiated charges in finding a violation of probation to be willful and substantial, just as the court may not rely on unsubstantiated charges in sentencing. *See Reese v. State*, 639 So. 2d 1067, 1068 (Fla. 4th DCA 1994) ("[U]nsubstantiated allegations of misconduct may not be considered by a trial judge at a criminal sentencing hearing and to do so violates fundamental due process."). In this case, without those erroneous findings, we cannot conclude that the trial court would have found the evidence to support a finding of willfulness sufficient to violate his probation. Thus, the trial court's denial of due process goes to the validity of the result itself and constitutes fundamental error. The

appropriate remedy for this violation of due process is to require a new violation of probation hearing.

The trial court also erred by immediately proceeding to impose the sentence without affording Milanes a hearing focusing on the sentence to be imposed. Florida Rule of Criminal Procedure 3.720 requires a sentencing hearing to precede the imposition of the sentence. A sentencing hearing is mandatory. *See State v. Scott*, 439 So. 2d 219, 221 (Fla. 1983).

This case is similar to *Harrington.* There, the court held a violation of probation hearing and, without holding a sentencing hearing, sentenced the defendant to forty-two years in prison for the violation. We reversed for a sentencing hearing, as we held that "the consideration of and determination as to whether to revoke probation is a process separate from a violation hearing." *Harrington*, 238 So. 3d at 299. Citing to *Black v. Romano*, 471 U.S. 606 (1985), we noted that a defendant in a probation violation case has the right to be heard both on the issue of whether the defendant violated probation and on the sentence to be imposed. "This hearing may be informal in nature, but there must be a reasonable opportunity to be heard." *Harrington*, 238 So. 3d at 299.

Just as in *Harrington,* in this case the trial court held a violation of probation hearing but immediately sentenced Milanes without affording him any opportunity to be heard on the sentence. This was a denial of due process. In addition, as noted above, the court relied on unsubstantiated prior conduct as sentencing factors, which in and of itself constitutes fundamental error. *See Hillary v. State*, 232 So. 3d 3, 4 (Fla. 4th DCA 2017); *Fernandez v. State*, 212 So. 3d 494, 496 (Fla. 2d DCA 2017).

For these reasons, we reverse the order revoking probation and sentence and remand for a new hearing. We direct that this case be assigned to a different judge for the purposes of the revocation hearing and, if applicable, sentencing hearing.

KLINGENSMITH and KUNTZ, JJ., concur.

\*　　\*　　\*

***Not final until disposition of timely filed motion for rehearing.***